STATE of Wisconsin, Plaintiff-Respondent,

v.

Randolph J. WHITING,† Defendant-Appellant.

Court of Appeals

*No. 86–0269–CR. Submitted on briefs August 14, 1986.—Decided
January 13, 1987.*

(Also reported in 402 N.W.2d 723.)

† Petition to review pending. This petition was not decided at the time the volume went to press. Its disposition will be reported in a later volume.

400

402

403

For the defendant-appellant, Randolph Whiting, there were briefs submitted by *Margaret A. Maroney*, assistant state public defender, of Madison.

For the plaintiff-respondent, there was a brief submitted by *Bronson C. La Follette*, attorney general, and *Sally L. Wellman*, assistant attorney general of Madison.

Before Cane, P.J., LaRocque and Sundby, JJ.

CANE, P.J.   Randolph Whiting appeals a first-degree murder conviction, a life sentence, and orders denying post-conviction relief. He contends that: (1) The trial court erred by giving the party-to-a-crime instruction;[1] (2) the trial court erred by admitting preliminary examination testimony of a witness who invoked the fifth amendment at trial; (3) the state improperly used and failed to correct false testimony; (4) the trial court erred by admitting a witness's prior statement; (5) the trial court improperly restricted cross-examination of a witness on bias; (6) he was denied his right to a unanimous jury verdict; and (7) he is entitled to a new trial in the interests of justice because the real controversy has not been tried. We reject Whiting's arguments, and we affirm the trial

---

[1]*See* Wis. JI—Crim. 400 (1982); sec. 939.05, Stats.

court's judgment of conviction and sentence as well as its orders denying post-conviction relief.

On the afternoon of December 26, 1983, Whiting was drinking, playing darts, and shooting pool with Mark Hinton and Denice Stumpner at The Back Forty, a tavern in Green Bay. Whiting, Hinton, and Stumpner were members of a motorcycle group. The bar's owner, Mark Lukensmeyer, was tending bar. At about 8:30 p.m., Chris Shavlik relieved Lukensmeyer at the bar, and Lukensmeyer began drinking and socializing with customers.

According to one version of the facts, Margaret Anderson arrived with her date, Terry Apfel, at about 11:30 p.m. After sitting and drinking for a time, Anderson became involved in a fight with some other women. Shavlik advised Apfel to take Anderson out of the bar before anything happened to her. The two left at approximately 12 to 12:30 a.m.

Bar closing time was 12:45 a.m. After everyone had left, Shavlik and Lukensmeyer left the bar. When Shavlik stepped into the alley next to the bar she saw Apfel, who was apparently angry with Anderson. He asked Shavlik if she would beat up Anderson. Apfel then pulled Anderson out of his car by the hair, threw her to the ground, and kicked her with steel-toed boots. He pushed Anderson toward Whiting, Stumpner, and Hinton, who were standing in the alley, and told them they could have her. Apfel then left. Lukensmeyer told Shavlik to leave and she complied, leaving Anderson in the alley with the four men, Lukensmeyer, Whiting, Hinton, and Stumpner.

Lukensmeyer and Hinton testified to the events leading to Anderson's subsequent death. The significant differences in their testimony regarded Lukensmeyer's role in the killing.

Hinton testified at trial to the following version of the crime. After Anderson had been turned over to the men, Lukensmeyer opened the bar and Hinton helped carry Anderson inside. Anderson was then sexually assaulted. Hinton claimed to have fallen asleep at the bar during the assault. He testified that Whiting woke him up and asked him to "take charge of the situation" because Lukensmeyer was beating Anderson with a pool cue and had apparently "lost control."

After the beating stopped, the four discussed what to do with Anderson. Although someone allegedly suggested taking her to the hospital, Lukensmeyer said he knew of a place to take her. Lukensmeyer drove Anderson and the three men to a meat packing plant. Contrary to an earlier statement implicating only Whiting, Hinton first testified at trial that both Whiting and Lukensmeyer got out of the car, taking Anderson with them. Whiting returned to the car before Lukensmeyer. The four left without Anderson.

The authorities found Anderson's body later that day near a manure pit at the packing plant. An autopsy revealed that she had been severely beaten and sexually abused, but that her death was caused by a slash wound to her neck. Hinton testified that he did not know Anderson's throat was going to be cut when she was taken out of the car.

Hinton testified further that he and Lukensmeyer later agreed to "leave each other out of it." Lukensmeyer asked Hinton to tell the police that Lukensmeyer was in his car sleeping while Anderson was being beaten. Lukensmeyer reportedly told Hinton that he had already gotten rid of all the evidence that would point toward him, that he had burned his coat, and purchased a new pair of snow tires. Hinton's

original statements to police reflected his agreement not to implicate Lukensmeyer.

After making the deal with Lukensmeyer, Hinton told Whiting that he would not implicate Lukensmeyer. Hinton stated that this conversation may have encouraged Whiting to flee. After Whiting disappeared from the area, Hinton made his statement to the police. He admitted that in so doing he may have "pointed the finger" at Whiting. At Whiting's trial, Hinton explained that he was no longer leaving Lukensmeyer out of the story because he himself "wasn't being left out of it." Hinton stated that he heard his name "come up a lot" on television news coverage during the first week of Whiting's trial.

Lukensmeyer's trial testimony differed in several respects. Lukensmeyer testified that after he left the bar at closing time, he went to his girlfriend's car and slept for about two hours. He claimed that he was awakened by Hinton who asked for a ride for himself, Stumpner, Whiting, and the victim, Anderson. When asked whether they got into the car, Lukensmeyer refused to answer, claiming his fifth amendment privilege against self-incrimination. Lukensmeyer continued to assert the privilege when asked whether he drove the four people to the packing plant, whether anyone got out of the car at the manure pit, and whether one less person was in the car when they left the pit area.

Lukensmeyer testified that later the same day he took a cab to The Back Forty, arriving at approximately 1:45 p.m., to clean and open the bar. He placed the garbage bags behind the building. When he arrived home that evening about 7 p.m., his girlfriend mentioned that there was blood in the back seat of the car.

Lukensmeyer drove the car to his brother's house in De Pere and left it there.

Lukensmeyer testified that the next day, Wednesday, December 28, 1983, he received a call from Hinton and Whiting. They asked him to help them tow another car. Lukensmeyer helped tow the car, and the men went to The Back Forty and then to a garage to put new snow tires on the car Lukensmeyer had driven.

Lukensmeyer claimed his fifth amendment privilege when asked whether he cleaned up the car he had driven and disposed of the garbage and tires. He also asserted his fifth amendment privilege when asked if he burned the coat he was wearing the night of Anderson's death. Lukensmeyer specifically denied re-entering the bar after Chris Shavlik locked it up at closing time.

When the state rested its case, the defense immediately rested without introducing any evidence. At the ensuing instruction conference, the state requested the party-to-a-crime instruction. The trial court agreed to give the party-to-a-crime instruction as well as instructions on first- and second-degree murder. The jury returned a guilty verdict of first-degree murder. Whiting was sentenced to life in prison.

The trial court later denied post-conviction motions on issues raised in this appeal.

## PARTY-TO-A-CRIME INSTRUCTION

Whiting first challenges the party-to-a-crime instruction on the basis of insufficient evidence. We conclude that there was sufficient evidence to support the jury's guilty verdict under either the party-to-a-

crime theory or the theory that Whiting actually slit Anderson's throat, causing her death.

Until Hinton testified at trial, the state had proceeded under the theory that Whiting had actually caused Anderson's death by slitting her throat. However, Hinton testified for the first time at trial that Lukensmeyer, not Whiting, had beaten Anderson at the tavern, that both Lukensmeyer and Whiting had gotten out of the car at the manure pit, and that Lukensmeyer had been the last of the two to return to the car. As a result of these new facts, the state requested a party-to-a-crime instruction, after both sides had rested, at the jury instruction conference. The court granted the request over Whiting's objection. In its closing statement, the prosecution argued that its theory had always been that Whiting slashed Anderson's throat, but if the jury believed Hinton's testimony, it could infer that Whiting had been a party to the crime.

■■

The test of whether sufficient evidence supports the jury's guilty verdict is not whether the appellate court is convinced beyond a reasonable doubt of the defendant's guilt. Rather, the test is whether we can conclude that the trier of fact could, acting reasonably, be convinced to the required degree of certainty by evidence that it had a right to believe and accept as true. *State v. Marshall*, 92 Wis. 2d 101, 120, 284 N.W.2d 592, 600 (1979). A conviction may be based in whole or in part on circumstantial evidence. *Id.* at 121, 284 N.W.2d at 601.

In *Marshall*, the supreme court upheld a first-degree murder conviction based on evidence showing that the defendant had been one of four persons present at the scene of a murder. The court held that

in order to support a conviction on the party-to-a-crime theory, the evidence need only show that the defendant was a willing participant. *Id.* at 122, 284 N.W.2d at 601. *Marshall* further stated that the party-to-a-crime instruction did

> "not even require that the defendant be present during the killing. Merely locating the victim for the murderer and bringing the two together could constitute aiding and abetting as could driving the get-away car once the offense was complete."

*Id. Marshall* held that even where no direct evidence established that the defendant had actually intended to aid in the execution of the crime, the jury could reasonably have inferred intent from circumstantial evidence. *Id.* at 122–23, 284 N.W.2d at 601.

■
Here, testimony showed that Lukensmeyer and Whiting were both present when Anderson was beaten and sexually abused at The Back Forty. Evidence shows that Whiting stood by as Lukensmeyer beat Anderson with a pool cue, breaking the cue in the process. Lukensmeyer and Whiting, along with the others, discussed taking Anderson to a hospital but, according to testimony, Lukensmeyer decided to take her to the manure pit. Whiting accompanied Lukensmeyer and the others to the isolated scene of Anderson's death, and evidence shows that both Whiting and Lukensmeyer got out of the car. The evidence strongly suggests that either Lukensmeyer or Whiting slit Anderson's throat at the manure pit and left her for dead. The jury had sufficient evidence to infer beyond a reasonable doubt that Whiting either committed the act or aided and abetted Lukensmeyer in murdering Anderson.

Whiting further contends that he was prejudiced because the state did not indicate that it would request the party-to-a-crime instruction until after Whiting rested his case without calling witnesses. Whiting argues that he would have called several witnesses to dispute the party-to-a-crime charge had the state notified him in a timely fashion. We find no merit in this argument. State law merely urges, but does not require, the prosecutor to charge under the party-to-a-crime statute, even when the state knows in advance that it will rely soley on the statute in its prosecution. *La Vigne v. State*, 32 Wis. 2d 190, 195, 145 N.W.2d 175, 177–78 (1966); *see* sec. 939.05, Stats. Wisconsin law places no duty on the state to notify the defendant of its intent to rely on the party-to-a-crime instruction where the evidence supporting such an instruction comes to light in the middle of a trial. Moreover, even if error, the state's failure to notify Whiting until the instruction conference was not prejudicial. *See Hardison v. State*, 61 Wis. 2d 262, 271, 212 N.W.2d 103, 107 (1973).

When Hinton's testimony surfaced at the trial, Whiting had sufficient notice of the possibility that the state could rely on the party-to-a-crime theory. Whiting's attorney made an offer of proof suggesting that her trial strategy would have differed had she known that the state would request a party-to-a-crime instruction. The offer of proof included testimony further linking Lukensmeyer to the actual killing and subsequent cover-up attempts. However, because the proferred evidence would do nothing to refute Whiting's liability as a party to the murder, we determine that Whiting suffered no prejudice. Moreover, Whiting made no request to reopen the testimony when he

learned that the state requested the party-to-a-crime instruction. Thus, we can conclude only that the decision not to call witnesses was strategic rather than the result of surprise.

## ADMISSION OF LUKENSMEYER'S PRELIMINARY EXAMINATION TESTIMONY

Lukensmeyer refused to answer several questions at trial, invoking the privilege against self-incrimination. The trial court consequently admitted Lukensmeyer's preliminary examination testimony relating to the areas in which Lukensmeyer had claimed the privilege. The trial court ruled that the preliminary examination testimony constituted an exception to the hearsay rule because Lukensmeyer's invocation of the privilege had rendered him an unavailable witness under sec. 908.04(1)(a), Stats. Whiting argues that the trial court erred by failing to compel Lukensmeyer to testify at trial and that admission of Lukensmeyer's preliminary examination testimony violated his rights to confrontation and due process. In particular, Whiting first contends that Lukensmeyer was not an unavailable witness because his preliminary examination testimony should have constituted a waiver of the privilege against self-incrimination at trial. Whiting further argues that even if Lukensmeyer did not waive his privilege, unusual circumstances surrounding that testimony overcame the inference of reliability afforded to testimony admitted through a firmly rooted hearsay exception. Because we conclude that Lukensmeyer did not waive the privilege by testifying at the preliminary examination and because we conclude that the preliminary examination testimony

412

bore sufficient indicia of reliability, we affirm the trial court's admission of the evidence.

■

A trial court's discretion in the admissibility of hearsay evidence will not be reversed unless it is abused or premised on an erroneous view of the law. *Christensen v. Economy Fire & Casualty Co.*, 77 Wis. 2d 50, 55, 252 N.W.2d 81, 84 (1977). Section 908.045(1), Stats., provides in part that if a declarant is unavailable as a trial witness, his or her testimony given at another proceeding is not excluded by the hearsay rule if the adverse party has had an opportunity to develop that testimony through direct, cross-, or redirect examination of the witness. Section 908.04(1)(a) provides that a witness is considered unavailable where the witness has been exempted by a judge's ruling on the ground of privilege from testifying concerning the subject matter of his or her statement.

■

Lukensmeyer did not waive the privilege by testifying at the preliminary examination. A person who has waived the privilege in one proceeding is not estopped from asserting it as to the same subject matter in a subsequent proceeding. *In re Neff*, 206 F.2d 149, 152 (3d Cir. 1953). The majority of jurisdictions concur that a fifth amendment waiver is limited to the particular proceeding in which the waiver occurs. *United States v. Licavoli*, 604 F.2d 613, 623 (9th Cir. 1979). Both *Neff* and *Licavoli* concerned witnesses who had testified before grand juries, then invoked the fifth amendment privilege at trials resulting from the grand juries' indictments. Neff had testified falsely before a grand jury regarding her involvement with the Communist party. As a result,

413

she was convicted of perjury. In the meantime, the grand jury returned an indictment against another, and Neff was required to testify at his trial. Neff refused to answer questions relating to the subject matter of her perjured grand jury testimony and was consequently found in contempt.

The Court of Appeals for the Third Circuit reversed the trial court's contempt finding, citing the majority rule that waiver of the privilege persists only to the end of a particular proceeding. *Neff*, 206 F.2d at 152. The *Neff* court reasoned that because a grand jury's investigatory character distinguished it from the judicial character of the subsequent trial, a defendant's waiver in the earlier proceeding could not be fairly applied to the latter. *Id*. The court further observed that a sentence of ten years' imprisonment for her grand jury perjury had drastically changed Neff's situation. *Id*. at 152–53. The Court of Appeals reasoned that Neff's case illustrated the importance of preserving a witness's right to invoke the privilege because "the setting in which the questions were asked of her had greatly changed and she could well have had apprehensions as to the incriminating effect of her required testimony which she did not have on the earlier occasion." *Id*.

Proponents of the majority rule agree with the *Neff* rationale that extending waiver from a related proceeding to the subsequent trial creates a danger of increased legal detriment to the witness. *See* E. Cleary, McCormick on Evidence, sec. 140 at 348 (West rev. 3d ed. 1984). Moreover, a contrary rule would discourage witnesses from waiving the privilege at preliminary proceedings, thus depriving the truth-seeking process not only of trial testimony but of whatever investigatory value the preliminary testimo-

ny provides. *See* McCormick's Handbook of the Law of Evidence, sec. 140 at 298 (West 2d ed. 1972).

*Licavoli* likewise held that grand jury testimony did not waive a witness's privilege at the ensuing trial. *Licavoli*, 604 F.2d at 623. The Court of Appeals for the Ninth Circuit noted that the defendant had suffered little prejudice because the witness's grand jury testimony was placed before the trier of fact as a result of the witness's unavailability at trial. *Id.* at 623–24.

Whiting, however, urges us to adopt the rule set forth in *Ellis v. United States*, 416 F.2d 791 (D.C. Cir. 1969). The *Ellis* Court held that a witness's grand jury testimony, if repeated at trial, would expose the witness to little additional risk of incrimination. *Id.* at 802. The *Ellis* decision, however, overlooks the fundamental difference in purpose between a grand jury investigation and the subsequent trial. Moreover, the *Ellis* Court acknowledged that the passage of time and a change in a grand jury's investigatory focus might expose a witness to new, incriminatory dangers. *Id.* at 803. *Ellis* merely concluded that the facts in that case would not contribute to an increased incriminatory danger. *Id.* at 802. We agree. The *Ellis* decision relies on a particular fact situation and departs from the prevailing rule. *Id.* at 799–800. We decline to adopt the minority rule.

No Wisconsin cases are directly on point.[2] However, we are persuaded by the rationale supporting

[2]An analogous case, however, supports the majority rule. *State ex rel. Goodchild v. Burke*, 27 Wis. 2d 244, 133 N.W.2d 753 (1965), *cert. denied*, 384 U.S. 1017 (1966). In *Goodchild*, our supreme court held that a defendant did not waive his right to refuse to take the stand at his trial by testifying at a suppression

the federal majority rule that a witness who testifies at a proceeding has not necessarily waived his or her privilege as to the same subject matter at the ensuing trial. Wisconsin law does recognize the essential difference between a preliminary examination and the subsequent trial. *See State v. Dunn*, 121 Wis. 2d 389, 396, 359 N.W.2d 151, 154 (1984). The preliminary examination is more akin to the grand jury function than it is to a trial on the issue of guilt beyond a reasonable doubt. The preliminary examination is intended to be a summary proceeding to determine basic facts as to probability. *Id.* at 396–97, 359 N.W.2d at 154. Thus, it follows that waiver of the fifth amendment privilege should not persist from one distinct stage of a criminal prosecution to another.

Moreover, here we have a situation where Lukensmeyer's preliminary testimony was given under the impression that he had an immunity "deal" with the prosecution. Evidence suggests that the status of Lukensmeyer's immunity changed between the preliminary examination and the trial. We do not determine the facts surrounding this "deal," but we note the potential unfair incriminatory danger it poses to a trial witness. Accordingly, we adopt the majority rule. Lukensmeyer validly asserted his privilege.

■
Whiting further contends, however, that Lukensmeyer's preliminary examination testimony lacked sufficient indicia of reliability to be admissible as an exception to the hearsay rule. We disagree. The reliability of evidence can be inferred where the evidence falls within a firmly rooted exception to the

hearing regarding the circumstances surrounding confessions he had made to police. *Id.* at 265, 133 N.W.2d at 764.

hearsay rule. *State v. Bauer*, 109 Wis. 2d 204, 213, 325 N.W.2d 857, 862 (1982). The evidence here rests on a firmly rooted exception, namely, the unavailability of the witness. However, the trial court must still determine whether there exist unusual circumstances that may warrant the exclusion of evidence. *Id.* at 213–14, 325 N.W.2d at 862. Where unusual circumstances are apparent, the trial court may have reason to inquire as to whether the defendant enjoyed a meaningful opportunity to confront the witness. *Id.* at 214, 325 N.W.2d at 862. In any case, the requirements of the confrontation clause are met where the trier of fact has a reasonable basis for determining the truthfulness of the prior statement. *Id.*

Whiting cites Lukensmeyer's strong motive to lie at the preliminary examination, the state's admission in its opening statement that it knew Lukensmeyer had lied about his involvement in the crime, and testimony that he had destroyed evidence, as unusual circumstances proving the unreliability of his preliminary examination testimony. However, the jury knew of these circumstances bearing on Lukensmeyer's credibility. Additionally, the preliminary examination afforded Whiting the opportunity to challenge the plausibility of Lukensmeyer's testimony. Because of this opportunity to cross-examine Lukensmeyer as to the plausibility of his story, in addition to the other characteristics of reliability inherent in the preliminary examination,[3] we conclude that the proceeding

---

[3]In addition to the opportunity to cross-examine, a preliminary hearing provides other assurances of trustworthiness: The witness is under oath, the defendant is represented by counsel, the

satisfied the purpose behind the confrontation clause. *See Bauer*, 109 Wis. 2d at 219, 325 N.W.2d at 865. Because the jury had reasonable basis for judging the reliability of Lukensmeyer's prior statements, we conclude that the trial court properly exercised its discretion by admitting them.

## *FALSE TESTIMONY CLAIM*

Whiting contends that the state violated his due process right to a fair trial by using and failing to correct false testimony. This contention is without merit. The crux of a denial of due process is deliberate deception. *United States ex rel. Burnett v. Illinois*, 619 F.2d 668, 674 (7th Cir. 1980), *cert. denied*, 449 U.S. 880 (1980). The presentation of inconsistent testimony is not to be confused with presenting perjured testimony. *State v. Ladabouche*, 502 A.2d 852, 855 (Vt. 1985). It is the jury's role to resolve issues of credibility. *Fehring v. Republic Insurance Co.*, 118 Wis. 2d 299, 305, 347 N.W.2d 595, 598 (1984).

Whiting's argument centers on Lukensmeyer's testimony that he had left the tavern and slept for approximately two hours while Anderson was severely beaten and sexually assaulted. In addition to Lukensmeyer's version, however, the state presented other testimony placing Lukensmeyer in the bar as well as testimony that Lukensmeyer had actually beaten Anderson. In its opening statement, the state told the jury it would present conflicting testimony, that some of the witnesses were motorcycling cohorts and had

proceedings are conducted before a judicial tribunal, and the proceedings are recorded. *Bauer,* 109 Wis. 2d 219, 325 N.W.2d at 865.

motive to lie about the incident, and that Lukensmeyer had entered into an immunity agreement with police premised on his truthful testimony and that the state had subsequently told Lukensmeyer that the agreement was off because of inconsistencies in his statement. We conclude that the state's use of Lukensmeyer's testimony was proper. It constituted merely the presentation of one among several conflicting versions of the facts. Because the jury was made aware of the factors affecting Lukensmeyer's credibility, and because it is the jury's task to sift through conflicting testimony and find the truth, we conclude that Whiting's right to fair trial was not prejudiced by the state's use of Lukensmeyer's testimony.

## ADMISSION OF HINTON'S PRIOR INCONSISTENT STATEMENT

Whiting argues that the trial court violated his confrontation and due process rights by admitting a prior inconsistent statement made by Mark Hinton to Thomas Hinz, a member of the Green Bay Police Department. At trial, the state asked Hinton whether he recalled telling Hinz that Whiting told him he had murdered Anderson. Hinton answered that he did not recall. Later, over Whiting's objection, the trial court admitted evidence of Hinton's prior statement to Hinz. Hinz testified at trial that he had interviewed Hinton in the presence of his attorney and another officer. Hinz stated that,

> "[a]t one point during the interview when I felt that Hinton was talking quite freely, I just interjected and I looked at him. I says, 'Did Whiting tell you he murdered Margaret Anderson?' And without any hesitation at all, he said, 'Yes.'"

Under cross-examination, Hinz testified that Hinton retracted the answer, claiming that he was not "real sure" Whiting had said that. Hinz further stated that Hinton had refused to put the response in his written statement to police.

Our analysis of this issue is twofold. We must first determine whether the testimony is admissible under Wisconsin's evidentiary rules. If that requirement is met, we must then determine whether admission of the evidence comports with Whiting's constitutional right to confront adverse witnesses. *See State v. Lenarchick*, 74 Wis. 2d 425, 436–37, 247 N.W.2d 80, 87 (1976).

Hinton's statement to Hinz of Whiting's alleged admission is not excluded as double hearsay by Wisconsin evidentiary rules. Section 908.05, Stats., provides:

> Hearsay within hearsay. Hearsay included within hearsay is not excluded under the hearsay rule if each part of the combined statements conforms with an exception to the hearsay rule provided in this chapter.

Whiting's alleged statement to Hinton that he murdered Anderson would be admissible under sec. 908.01(4)(b)1, Stats., as an admission by a party opponent. Hinton's statement to Hinz would not be hearsay by itself under sec. 908.01(4)(a)1, which provides:

> (4) Statements which are not hearsay. A statement is not hearsay if
>
> (a) *Prior statement by witness.* The declarant testifies at the trial or hearing and is subject to cross-examination concerning the statement, and the statement is:

1. Inconsistent with his testimony, ....

Our supreme court has held that where a witness denies remembering a prior statement, the trial court is within its discretion to declare the denial of memory "inconsistent" testimony if the trial court doubts the good faith of the witness's professed memory loss. *Lenarchick*, 74 Wis. 2d at 435–36, 247 N.W.2d at 86. Because we conclude that the trial court did not abuse its discretion in doubting the good faith of Hinton's claimed memory loss, we conclude that the statement was admissible under Wisconsin's evidentiary rules.

We also conclude that the statement's admission comports with Whiting's right to confront adverse witnesses. Here, Hinton testified in court subject to cross-examination, and the jury was able to observe his demeanor. Hinz also testified about Hinton's statement and was cross-examined vigorously about the circumstances surrounding it. The jury was thus able to weigh the credibility of both witnesses. *Lenarchick* held that the availability of the witness for cross-examination, whether counsel examines him or not, is sufficient to satisfy confrontation clause requirements. *Id.* at 444, 247 N.W.2d at 91. We therefore conclude that the trial court properly admitted Whiting's alleged admission through Hinton's prior statement to Lieutenant Hinz.

## LIMITATION ON TESTIMONY OF HINTON'S BIAS

Whiting argues that the trial court abused its discretion by excluding evidence that Hinton had not

been charged with any crime relating to Anderson's beating, sexual assault, and murder. Whiting contends that the trial court's exclusion of this evidence violated his due process and confrontation rights. We reject Whiting's contention. The extent and scope of cross-examination on the issue of a witness's bias is within the discretion of the trial court. *See Champlain v. State,* 53 Wis. 2d 751, 756–57, 193 N.W.2d 868, 872–73 (1972). We will not reverse the trial court's determination unless it represents a prejudicial abuse of discretion. *Id.* Trial judges retain wide discretion with respect to the confrontation clause in imposing limits on cross-examination relating to a witness's bias. *Delaware v. Van Arsdall,* — U.S. —, 106 S. Ct. 1431, 1435 (1986). A trial court properly exercises its discretion, in such an instance, where the interrogation is repetitive or only marginally relevant. *Id.*

Here, the jury heard sufficient evidence to draw inferences about Hinton's bias. The jury knew of Hinton's deal with police that provided immunity if Hinton's testimony was corroborated. The jury knew that Hinton's primary motive in giving his statement was to help himself and that the best way to help himself would be to implicate someone else. Accordingly, we conclude that the trial court did not abuse its discretion by refusing to allow cross-examination that would only have elicited repetitive or marginally relevant evidence.

## THE JURY'S VERDICT

Whiting argues that the jury's verdict was not unanimous, and thus unconstitutional as a denial of due process, because insufficient evidence supported

either the theory that Whiting personally killed Anderson or that Whiting was a party to the murder. *See Yates v. United States*, 354 U.S. 298, 312 (1957). Whiting contends that post-trial interviews published in the local newspaper indicate that several jurors would not have voted for conviction had the court not given the party-to-a-crime instruction. We note, however, that a verdict may not be impeached by information from a juror regarding the jury's deliberative process. *State v. Poh*, 116 Wis. 2d 510, 517–18, 343 N.W.2d 108, 113 (1984). Because we have already concluded that the evidence was sufficient to support either prosecution theory, we summarily reject Whiting's argument.

## *NEW TRIAL IN INTERESTS OF JUSTICE*

Finally, Whiting argues that he is entitled to a new trial because the real controversy was not fully tried. Whiting contends that because of the state's late notice of its decision to request a party-to-a-crime instruction, he was prevented from introducing evidence that would have refuted his involvement as an aider and abettor. The power to grant a new trial in the interest of justice should be exercised only in exceptional cases. *State v. Cuyler*, 110 Wis. 2d 133, 141, 327 N.W.2d 662, 667 (1983). Such relief is appropriate where a trial court's erroneous view of the law permeated an entire trial and precluded material witnesses from testifying on a major issue, or where highly probative evidence that could have materially altered the trial's result was not presented to the jury. *Id.*

Although the trial court applied the test of whether a substantial probability of a different retrial result existed, this error did not prejudice Whiting. The result is the same under the proper standard. The jury was not erroneously deprived of the opportunity to hear material testimony that bore on the important issues of the case. *See State v. Wyss*, 124 Wis. 2d 681, 735, 370 N.W.2d 745, 770–71 (1985). Whiting had notice through Hinton's testimony that the state could request the party-to-a-crime instruction. Moreover, when the state requested the instruction, Whiting failed to move to reopen his case. Whiting's offer of proof included evidence possibly implicating Lukensmeyer in the killing but nothing to refute Whiting's liability as a party to the crime. In light of these facts, we conclude that Whiting has failed to show that the real controversy was not tried.

*By the Court.*—Judgment and orders affirmed.