COURT OF APPEALS
DECISION
DATED AND FILED

October 14, 2025

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2021AP1357-CR**

STATE OF WISCONSIN

Cir. Ct. No. 2016CF3838

IN COURT OF APPEALS
DISTRICT I

STATE OF WISCONSIN,

PLAINTIFF-RESPONDENT,

V.

MONTI LAMAR CANNON,

DEFENDANT-APPELLANT.

APPEAL from a judgment and an order of the circuit court for Milwaukee County: FREDERICK C. ROSA and DAVID A. FEISS, Judges. *Affirmed*.

Before Colón, P.J., Donald, and Geenen, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1 PER CURIAM. Monti Lamar Cannon, pro se, appeals a judgment and an order denying his postconviction motion.[1] On appeal, Cannon contends that: (1) his trial counsel provided ineffective assistance of counsel; (2) the State engaged in misconduct at trial; (3) the State committed a ***Brady*** violation;[2] and (4) he is entitled to a new trial in the interest of justice. We reject Cannon's arguments and affirm.

## BACKGROUND

¶2 Cannon was charged with armed robbery with the use of force and aggravated battery with the use of a dangerous weapon. According to the criminal complaint, on August 27, 2016, Cannon shot Murphy and stole Murphy's wallet.[3] Murphy survived.

¶3 Cannon proceeded to trial. Officer Trinidad Rodriguez testified that on August 27, 2016, while responding to a call about a broken window at a school, he saw Cannon grab Murphy, turn Murphy around, and fire three shots. Officer Rodriguez testified that Murphy did not appear to be aggressive towards Cannon.

¶4 Officer Rodriguez pursued Cannon, and other officers took him into custody. As Cannon was handcuffed, a firearm fell out of his pocket. Later,

---

[1] The Honorable Frederick C. Rosa presided over Cannon's trial and sentencing hearing. The Honorable David A. Feiss handled Cannon's postconviction proceedings. We refer to Judge Rosa as the trial court and Judge Feiss as the circuit court.

[2] *See **Brady v. Maryland**, 373 U.S. 83 (1963).*

[3] For confidentiality and ease of reading, we use a pseudonym to refer to the victim in this case. WIS. STAT. RULE 809.86(4) (2023-24).

All references to the Wisconsin Statutes are to the 2023-24 version.

during a search incident to arrest, officers discovered a wallet on Cannon that contained identification belonging to Murphy.

¶5      Officer David Bettin, who was on patrol with Officer Rodriguez, also saw Cannon shoot Murphy. According to Officer Bettin, Cannon fired two gunshots. After the first shot, Murphy fell to the ground and then Cannon shot him again.

¶6      Officer Todd Fischer testified that two bullet casings were recovered at the scene. Officer Fischer also testified that casings are often hard to locate after a shooting because they can fall into clothing, bounce into the grass, get caught under a car, or other variables.

¶7      Murphy testified that he was walking to visit his uncle when Cannon approached. Cannon had a gun in his hand and told Murphy to "break yourself."[4] Murphy did not know what that meant. Cannon shot Murphy, and after the second shot, Murphy gave Cannon his wallet. Murphy testified that Cannon shot him a total of four times: twice in his shoulder; once in his leg; and once in his backside.

¶8      Cannon testified on his behalf. According to Cannon, he was walking to the store and Murphy turned around and said, "Motherfucker, you don't remember me?" Murphy then moved towards him and they "tussl[ed]."[5] Cannon pulled his firearm out and gave a warning shot. He did not know that this shot hit Murphy. He intentionally aimed at Murphy's leg for the second shot.

_____

[4] According to Officer Fischer, "break yourself" is a term used by an assailant to tell a victim that the victim is going to be robbed.

[5] Later, Cannon testified that Murphy grabbed his arm and sweater. Cannon also stated that Murphy was "physically trying to slam [him] to the ground."

3

Cannon said that he was scared and feared for his life and thought that Murphy was going to take the gun from him. Cannon testified that he only fired his gun twice. Cannon said that in the tussle, he dropped his phone and a charger. When he went to pick up his belongings, he also picked up Murphy's wallet in order to identify Murphy.

¶9 During closing arguments, Cannon's trial counsel argued that multiple people saw the shooting, but their versions of events were inconsistent. He highlighted the inconsistent evidence about the number of shots fired, and argued that the physical evidence supported Cannon's testimony that he fired two shots. At the request of Cannon's trial counsel, the trial court provided the jury with a self-defense instruction.

¶10 During deliberations, the jury requested Murphy's medical records. The court denied the request as no medical records were presented at trial.

¶11 The jury rejected Cannon's self-defense argument and found Cannon guilty as charged. Cannon was sentenced to a total of eleven years of initial confinement and five years of extended supervision.

¶12 Cannon's appellate counsel filed a no-merit appeal. Subsequently, the no-merit appeal was dismissed and the appellate deadlines reinstated so that Cannon could proceed pro se.

¶13 Cannon filed a postconviction motion pro se. Cannon asserted that his trial counsel was ineffective for failing to impeach Murphy, Officer Bettin, and

Officer Rodriguez, and failing to obtain Murphy's medical records.[6] Cannon also argued that the prosecutor committed misconduct when he failed to correct Murphy's testimony that he was shot four times and failed to disclose Murphy's medical records. Finally, Cannon argued that he was entitled to a new trial in the interest of justice.

¶14 After additional briefing, a ***Machner*** evidentiary hearing took place.[7] At the ***Machner*** hearing, Cannon's trial counsel testified that his strategy, which he discussed with Cannon, was to pursue self-defense at trial. Cannon's trial counsel recalled that at trial, Murphy testified that he was shot four times, one officer testified that there were three shots fired, and another officer testified that there were two shots fired. Because the record had inconsistencies to highlight in closing arguments, Cannon's trial counsel did not believe using the discovery for impeachment purposes was necessary. He also observed that there was a risk of being too aggressive with witnesses during cross-examination and a possibility that a witness may bring up unknown information that was detrimental to Cannon. In particular, he noted that police reports do not always contain everything that was said, observed, or done. Additionally, he did not believe that the number of times the victim was shot was relevant to self-defense.

¶15 In regards to the medical records, Cannon's trial counsel testified that the medical records were not a part of discovery and he did not see a need to

---

[6] Cannon also argued that his trial counsel was ineffective for failing to present evidence from a Shot Spotter report and failing to examine Murphy's clothing. Cannon does not renew these arguments on appeal, so we do not discuss these issues further.

[7] ***State v. Machner***, 92 Wis. 2d 797, 285 N.W.2d 905 (Ct. App. 1979).

request the records from Murphy based on his review of the case. He further testified that in his experience medical reports were not helpful in a shooting case.

¶16 After hearing the testimony and oral arguments, the circuit court denied the motion. The court found that Cannon's trial counsel did not perform deficiently, and even if there was deficient performance, there was not prejudice. The court observed that Cannon's possession of Murphy's wallet was a difficult fact to overcome when Murphy was claiming that he was robbed. The court also rejected Cannon's arguments that the prosecutor committed misconduct and the State failed to provide exculpatory evidence. Finally, the court concluded that the real controversy was tried and rejected the request for a new trial.

¶17 Cannon appealed. Subsequently, he moved to dismiss his appeal and extend the time for filing a supplemental postconviction motion, which this court granted.

¶18 In his supplemental postconviction motion, Cannon repeated his argument that the prosecutor committed misconduct. Cannon also requested that the circuit court issue an order to subpoena Murphy's medical records pursuant to WIS. STAT. § 908.03(6m)(c).

¶19 The circuit court denied Cannon's supplemental postconviction motion. First, the circuit court indicated that it was not persuaded that it had the authority to subpoena Murphy's records in a closed criminal case. The court noted that WIS. STAT. § 908.03(6m)(c) merely places limitations on the subpoena of patient health care records and does not provide a criminal court with the authority to subpoena the health care records of a victim in a closed criminal case. Second, the court found that Cannon had waived his opportunity to request the records by failing to seek them before his motion was decided. Third, the court stated that the

medical records were not material to its decision on the ineffective assistance of counsel claims. The court reiterated that trial counsel did not perform deficiently, and Cannon was not prejudiced. The court stated there was not a reasonable probability that the records would have made a difference in the outcome of the trial or altered the court's ruling on the postconviction motion.

¶20 This appeal follows. Additional relevant facts are discussed below.

## DISCUSSION

### I. Ineffective Assistance of Counsel

¶21 On appeal, Cannon renews his argument that his trial counsel was ineffective.

¶22 To prevail on a claim of ineffective assistance of counsel, a defendant must show that counsel's performance was deficient and that the defendant suffered prejudice as a result. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). We need not address both prongs of the test if the defendant does not make a sufficient showing on one of the prongs. *Id.* at 697.

¶23 To establish deficient performance, a defendant must show that counsel's representation "fell below an objective standard of reasonableness." *Strickland*, 466 U.S. at 687-88. "In general, there is a strong presumption that trial counsel's conduct 'falls within the wide range of reasonable professional assistance.'" *State v. Breitzman*, 2017 WI 100, ¶38, 378 Wis. 2d 431, 904 N.W.2d 93 (citation omitted). When evaluating the reasonableness of counsel's conduct, we are "'highly deferential'" and "make 'every effort … to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the

7

time.'" ***State v. Carter***, 2010 WI 40, ¶22, 324 Wis. 2d 640, 782 N.W.2d 695 (citation omitted).

¶24 To establish prejudice, a defendant must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." ***State v. Thiel***, 2003 WI 111, ¶20, 264 Wis. 2d 571, 665 N.W.2d 305 (citation omitted).

¶25 A claim of ineffective assistance of counsel presents a mixed question of law and fact. ***State v. Gutierrez***, 2020 WI 52, ¶19, 391 Wis. 2d 799, 943 N.W.2d 870. We will uphold the circuit court's finding of fact unless they are clearly erroneous. ***Id.*** Whether trial counsel's performance was deficient and prejudicial is a question of law that we review independently. ***Id.***

¶26 Cannon argues that his trial counsel was deficient for failing to impeach Murphy and Officer Bettin regarding the number of shots fired. At trial, Murphy testified that he was shot four times and Officer Bettin testified that there were two shots fired. Cannon highlights a "hospital investigation" police report indicating that Murphy had two gunshot wounds and a police report indicating Officer Bettin said he heard three shots. Cannon also argues that Officer Rodriguez should have been impeached with a police report indicating that Officer Rodriguez stated Murphy "turn[ed] quickly towards [Cannon]." Cannon notes that at trial, Officer Rodriguez testified that Cannon grabbed Murphy and turned him around.

¶27 We conclude that Cannon's trial counsel did not perform deficiently. At the ***Machner*** hearing, trial counsel testified that given the inconsistencies in the trial testimony, which he utilized in closing, it was unnecessary to impeach the

witnesses with the discovery. Trial counsel further testified that there was a risk of being too aggressive with the witnesses and a possibility that the witnesses could bring up unknown information that was detrimental to Cannon's case. This was a reasonable strategic choice and does not constitute deficient performance. "[C]ounsel's performance need not be perfect, nor even very good, to be constitutionally adequate." *Carter*, 324 Wis. 2d 640, ¶22.

¶28 Next Cannon argues that his trial counsel performed deficiently when he failed to obtain Murphy's medical records. Cannon, however, does not include the medical records in the record. Accordingly, we presume the records support the circuit court's ruling that trial counsel did not perform deficiently. *See Fiumefreddo v. McLean*, 174 Wis. 2d 10, 27, 496 N.W.2d 226 (Ct. App. 1993) (stating that "when an appellate record is incomplete in connection with an issue raised by the appellant, we must assume that the missing material supports the [circuit] court's ruling").

¶29 Moreover, even if we assume that the medical records reflect that Murphy was not shot four times, this does not change the fact that trial counsel had a strategic reason not to cross-examine the witnesses about the inconsistencies in the number of shots fired. Thus, we are not convinced that Cannon's trial counsel performed deficiently. Accordingly, we do not reach the issue of prejudice and we conclude that the circuit court properly rejected Cannon's ineffective assistance of counsel claims. *See Strickland*, 466 U.S. at 697.

## II.    Prosecutorial Misconduct

¶30    Cannon next argues that there was prosecutorial misconduct because Murphy's testimony that he was shot four times was false.[8]

¶31    "Due process prevents a prosecutor from relying on testimony the district attorney knows to be false, or later learns to be false." *State v. Nerison*, 136 Wis. 2d 37, 54, 401 N.W.2d 1 (1987).   A new trial is required "if the prosecutor in fact used false testimony which, in any reasonable likelihood, could have affected the judgment of the jury." *Id.*

¶32    Cannon does not present, nor does the record establish, definitive proof regarding the actual number of shots fired.   Cannon and Officer Bettin testified that there were two shots fired.   Officer Rodriguez testified that there were three shots.   Murphy testified Cannon shot him four times.   As the State observes, reasonable people may mishear or misremember the number of shots fired in quick succession without any intent to deceive.   The number of shots was a question for the jury when evaluating Cannon's guilt.   *See State v. Whiting*, 136 Wis. 2d 400, 418, 402 N.W.2d 723 (Ct. App. 1987) (stating that "[t]he presentation of inconsistent testimony is not to be confused with presenting perjured testimony" and it is "the jury's role to resolve issues of credibility").   Thus, we are not persuaded that the prosecutor committed misconduct.

---

[8] Cannon also asserts in passing that the prosecutor falsely told the jury that Murphy pointed out Cannon in a line-up.   Because Cannon did not raise this issue in his postconviction motion and raises this argument for the first time on appeal, we decline to consider it.   *See State v. Dowdy*, 2012 WI 12, ¶43, 338 Wis. 2d 565, 808 N.W.2d 691.

### III. Disclosure of Murphy's Medical Records

¶33 Cannon also argues that the State committed a *Brady* violation by not turning over Murphy's medical records.

¶34 A defendant has a due process right to any favorable evidence that is material either to guilt or to punishment that is in the State's possession, including any evidence which may impeach one of the State's witnesses. *See Brady v. Maryland*, 373 U.S. 83, 87 (1963); *Giglio v. United States*, 405 U.S. 150, 154-55 (1972).

¶35 To establish a *Brady* violation, the defendant must satisfy a three-prong test. *State v. Wayerski*, 2019 WI 11, ¶35, 385 Wis. 2d 344, 922 N.W.2d 468. First, "the evidence at issue must be favorable to the accused, either because it is exculpatory or impeaching[.]" *Id.* Second, "the evidence must have been suppressed by the State[.]" *Id.* Third, "the evidence must be material." *Id.* "We independently review whether a due process violation has occurred, but we accept the [circuit] court's findings of historical fact unless clearly erroneous." *State v. Lock*, 2012 WI App 99, ¶94, 344 Wis. 2d 166, 823 N.W.2d 378.

¶36 Here, Cannon has failed to meet his burden of proving that Murphy's medical records constituted favorable evidence. *Wayerski*, 385 Wis. 2d 344, ¶35. As stated above, the medical records are not in the record. Thus, Cannon cannot establish that these records were favorable to him and we presume that they are not. *See Fiumefreddo*, 174 Wis. 2d at 27.

¶37 Moreover, even if the medical records were favorable, Cannon has not established that the State had possession of the records and suppressed this

11

evidence. ***Wayerski***, 385 Wis. 2d 344, ¶35. Thus, Cannon has not established that the State committed a ***Brady*** violation.[9]

### IV. New Trial in the Interest of Justice

¶38 Lastly, Cannon argues that we should grant a new trial in the interest of justice because the real controversy was not fully tried. *See* WIS. STAT. § 752.35. According to Cannon, the real controversy was not fully tried because the jury did not know that Murphy, Officer Bettin, and Officer Rodriguez provided false testimony.

¶39 The power to grant a new trial "is formidable, and should be exercised sparingly and with great caution." ***State v. Sugden***, 2010 WI App 166, ¶37, 330 Wis. 2d 628, 795 N.W.2d 456 (citation omitted). We exercise our power to grant a discretionary reversal only in exceptional cases. ***Id.***

¶40 Here, Cannon's argument does nothing more than repackage his ineffective assistance of counsel claim. An interest of justice claim fails if it merely rehashes arguments that this court has rejected. ***State v. Arredondo***, 2004 WI App 7, ¶56, 269 Wis. 2d 369, 674 N.W.2d 647. Thus, because Cannon's argument for discretionary reversal rehashes his meritless ineffective assistance of counsel claim, we decline Cannon's request to grant a new trial in the interest of justice.

*By the Court.*—Judgment and order affirmed.

---

[9] We note that Cannon also suggests in his brief in passing that the circuit court should have granted his request for the medical records. Cannon, however, does not cite any legal authority in support or develop an argument for this request in his brief. Therefore, we will not consider it. *See **State v. Pettit***, 171 Wis. 2d 627, 646-47, 492 N.W.2d 633 (Ct. App. 1992).

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.