PER CURIAM.
This disciplinary proceeding is before us on a complaint of the Florida Bar and the report of the referee, which the Bar contests. We have jurisdiction pursuant to article V, section 15, Florida Constitution, and approve in part and reject in part the referee’s recommendations.
The Florida Bar filed a complaint against John Montgomery Greene for the alleged violation of former Integration Rule 11.-02(3)(a) (conduct contrary to honesty, justice, and good morals); former Disciplinary Rules 1-102(A)(4) (conduct involving dishonesty, fraud, deceit, or misrepresentation); 1-102(A)(6) (conduct reflecting adversely on fitness to practice law); 3-104(A) (failure to properly supervise non-lawyer personnel); 3-104(C) (failure to insure compliance by nonlawyer personnel); 3-104(D) (failure to examine and be responsible for work delegated to nonlawyer personnel); and 6-101(A)(3) (neglecting a legal matter).
After a hearing, the referee recommended that Greene only be found guilty of violating former Disciplinary Rule 6-101(A)(3) for neglecting a legal matter entrusted to him. The referee further recommended that Greene receive a public reprimand and be placed on probation for a period of two years. Based upon the testimony at the hearing, the referee made the following findings of fact:
(a) The Respondent, John Montgomery Greene, is, and at all times relevant hereto, was a member of the Florida Bar practicing law in Ocala, Marion County, Florida. In November of 1982 Mr. and Mrs. Nutt secured Respondent’s representation of them on the pending sale of six lots. Prior to the closing Respondent learned that there were several judgment liens against the property and by letter dated December 10, 1982, advised the Nutts as to the title problem and of the possibility that prior mortgages that they had held on the property would have to be foreclosed in order to have a title superior to the liens. Prior to contacting *1282 Respondent the Nutts had held mortgages on this property which were in default and rather than foreclose the same they received and recorded Warranty Deeds in full satisfaction of the notes and mortgages. Apparently the liens arose between the time the Nutts received the mortgages and the time their deeds to the property were recorded.
(b) Subsequent to the letter of December 10, 1982, Respondent repeatedly advised the Nutts and their realtor that he would clear the title to the lots. However by his own admission he never quite got to it because of other matters in his office. Actually Respondent candidly admitted that the matter was continually put off because it was such an involved mess. As a result the pending sale of the six lots fell through in June of 1983 and the buyer obtained his deposit back.
(c) The procrastination of Respondent continued through the balance of 1983 until a point in time in 1984 when the Nutts obtained another purchaser for three of the lots. The purchaser was to buy two of the lots for $24,000.00 cash and the third lot for $12,000.00 with a purchase money mortgage. In preparation of the sale an employee of the Respondent, who was not a member of the Bar, checked the property records and reported back to Respondent that the title was now clear, which Respondent reported to the Nutts as well as the purchasers and the transaction was closed in October of 1984.
(d) After the closing it was discovered that the information Respondent had given the Nutts as well as the purchasers was incorrect and that there were still liens against the property. Thereafter, in September of 1985, Respondent personally, out of his own funds, refunded the $24,000.00 to the purchasers.
(e) The above facts are established by clear and convincing evidence.... It is clear from the evidence that the Respondent has committed no dishonesty nor intentional misrepresentation but has rather failed to give the matter left in his care the attention required by the Cannon [sic] of Ethics. It appears from the record in this case that there was and is the possibility that he could do nothing for his clients. However if that was and is the case he owed the client a duty to advise him of such opinion. No evidence was proffered concerning Respondent’s supervision of his nonlawyer personnel.
GUILT
The Bar argues that the referee should have found Greene guilty of all alleged violations because he never responded to the Bar’s Request for Admissions, which included a statement that he had violated all of the enumerated rules. We agree that Greene’s failure to respond to the allegations of fact in the Request for Admissions deemed them admitted. The Florida Bar v. Baron, 408 So.2d 1050 (Fla. 1982). However, we cannot say that the referee erroneously concluded that the evidence offered in mitigation was sufficient to exonerate Greene of those charges involving moral turpitude: former Integration Rule 11.02(3)(a) (conduct contrary to honesty, justice or good morals) and former Disciplinary Rule 1-102(A)(4) (conduct involving dishonesty, fraud, deceit or misrepresentation). The mitigating evidence did not demonstrate a lack of guilt with respect to the other charges: former Disciplinary Rules 1-102(A)(6) (conduct reflecting adversely on fitness to practice law); 3-104(A) (failure to properly supervise nonlawyer personnel); 3-104(C) (failure to insure compliance by nonlawyer personnel); and 3-104(D) (failure to examine and be responsible for work delegated to nonlawyer personnel). In view of the prior problems with the title and the complications involved, Greene was not entitled to rely solely on the assurances of his nonlaw-yer personnel that the title was clear.
DISCIPLINE
The Bar argues that Greene should receive a one-year suspension with proof of rehabilitation required prior to reinstatement. However, we are not persuaded that this or the referee’s recommended dis *1283 cipline is the proper penalty under the circumstances of this case. We previously held in The Florida Bar v. Pahules, 233 So.2d 130, 132 (Fla.1970), that discipline for unethical conduct by a member of the Florida Bar must serve three purposes:
First, the judgment must be fair to society, both in terms of protecting the public from unethical conduct and at the same time not denying the public the services of a qualified lawyer as a result of undue harshness in imposing penalty. Second, the judgment must be fair to the respondent, being sufficient to punish a breach of ethics and at the same time encourage reformation and rehabilitation. Third, the judgment must be severe enough to deter others who might be prone or tempted to become involved in like violations.
Greene has been disciplined several times in the past. In 1970, he received a public reprimand and one-year probation for failing to file income tax returns, The Florida Bar v. Greene, 235 So.2d 7 (Fla. 1970), and was privately reprimanded in 1980 for neglect of a legal matter. In 1985, he received a one-year probation and public reprimand for neglecting a legal matter entrusted to him. The Florida Bar v. Greene, 463 So.2d 213 (Fla.1985). Thereafter, he was held in contempt by this Court for failing to observe the conditions of his probation imposed in 1985. The Florida Bar v. Greene, 485 So.2d 1279 (Fla.1986). As noted in Florida Bar v. Vemell, 374 So.2d 473, 476 (Fla.1979), “[t]his Court deals more severely with cumulative misconduct than with isolated misconduct.” Consequently, we find that the minimum sanction for Greene’s misconduct should be a ninety-one-day suspension* in addition to the two-year probation recommended by the referee.
CONCLUSION
We approve the referee’s findings of not guilty as to former Integration Rule 11.02(3)(a) and former Disciplinary Rule 1-102(A)(4) and guilty as to rule 6-101(A)(3), but disapprove his findings of not guilty as to rules 1-102(A)(6), 3-104(A), 3-104(C) and 3-104(D). Additionally, we alter the referee’s recommended sanctions to the extent that John Montgomery Greene is hereby suspended from the practice of law in this state for ninety-one days. The suspension shall begin thirty days from the date this order becomes final to give Greene an opportunity to wind up his affairs and protect the interests of his clients. He shall accept no new clients from the date of filing of this opinion. Additionally, Greene shall provide notice to his clients of his suspension in accordance with the provisions of rule 3-5.1(h), Rules Regulating The Florida Bar. Greene shall also be placed on probation for a period of two years upon the termination of his suspension according to the following terms and conditions recommended by the referee:
1. That the Respondent furnish to the Florida Bar quarterly a list of all legal matters left in his care as an attorney and which have not been fully completed within six months of the time they were initially left in his care and to include in such list the initials of his client together with the date that they were initially left in his care and the reason such representation has not been concluded.
2. That the Respondent pay the cost of these proceedings within sixty (60) days of this date, said cost to be taxed at a hearing upon motion of The Florida Bar. In addition thereto Respondent shall pay to The Florida Bar the sum of $100.00 per month as and for cost of supervision for the term of probation.
Costs in the amount of $898.94 are hereby taxed against Greene for which sum let execution issue.
It is so ordered.
OVERTON, EHRLICH, SHAW, BARKETT, GRIMES and KOGAN, JJ., concur.
McDONALD, C.J., dissents.

Any suspension of more than ninety days requires proof of rehabilitation before reeligibility to practice law. Rule 3-5.1(e), Rules Regulating The Florida Bar.