626 So.2d 178 (1993)
THE FLORIDA BAR, Complainant,
v.
William F. DANIEL, Respondent.
Nos. 78063, 78065.
Supreme Court of Florida.
September 30, 1993.
Rehearing Denied November 17, 1993.
*180 John F. Harkness, Jr., Executive Director, John T. Berry, Staff Counsel, and James N. Watson, Jr., Bar Counsel, Tallahassee, for complainant.
William F. Daniel, pro se.
PER CURIAM.
William F. Daniel seeks review of the referee's reports in these consolidated disciplinary proceedings finding him guilty of misconduct and recommending concurrent thirty-day suspensions. We have jurisdiction[1] and approve the referee's findings and recommended discipline.
Two complaints were filed against Daniel. Case no. 78,065 deals with Daniel's failure to get court approval of a settlement that was reached with an insurance company for personal injuries sustained by a minor.[2] Daniel was charged with violating the following Rules Regulating The Florida Bar: rule 4-1.3 (a lawyer shall act with reasonable diligence and promptness in representing a client); rule 4-1.4(a) (a lawyer shall keep a *181 client reasonably informed about the status of a matter and promptly comply with reasonable requests for information); rule 4-1.4(b) (a lawyer shall explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation); rule 4-1.5(a) (an attorney shall not collect an illegal or prohibited fee); rule 4-1.15(b) (upon receiving funds or other property in which a client or third person has an interest, a lawyer shall promptly notify the client or third person; a lawyer shall promptly deliver any funds or other property that the client or third person is entitled to and, upon request by client or third party shall promptly render a full accounting regarding such property); rule 4-1.15(d) (a lawyer shall comply with The Florida Bar Rules Regulating Trust Accounts); rule 4-3.2 (a lawyer shall make reasonable efforts to expedite litigation consistent with the interests of the client); and rule 5-1.1 (money or other property entrusted to an attorney for a specific purpose, including advances for costs and expenses, is held in trust and must be applied only to that purpose).
Case no. 78,063 deals with Daniel's failure to effect a public sale after obtaining a judgment in foreclosure for his clients.[3] Daniel was charged with violating rules 4-1.3 (a lawyer shall act with reasonable diligence and promptness in representing a client); 4-1.4(a) (a lawyer shall keep a client reasonably informed about the status of a matter and promptly comply with reasonable requests for information); and 4-3.2 (a lawyer shall make reasonable efforts to expedite litigation consistent with the interests of the client) of the Rules Regulating The Florida Bar.
Copies of the complaints and requests for admissions were sent by certified mail to Daniel's record Bar address on June 10, 1991, and were signed for by Daniel on June 17, 1991. After receiving no response from *182 Daniel to either the complaints or the requests for admissions, the Bar filed a motion to deem matters admitted and motions for summary judgment. Copies of the motions also were sent to Daniel's record Bar address by certified mail, but were returned unclaimed.
A hearing on the Bar's motions was held on January 14, 1992. Daniel made a special appearance to contest jurisdiction, maintaining that the referee lacked jurisdiction because, among other things, the Bar had not served him with a "filed" copy of the complaints. After finding that the Bar had effected proper service of its complaints and requests for admissions, as well as its motions for summary judgment, the referee heard arguments.
Because Daniel failed to respond to the Bar's requests for admissions all matters for which an admission was requested were deemed admitted. Based upon the admitted facts, the referee found Daniel guilty of the misconduct charged in both complaints. The referee deferred argument on the appropriate discipline and entered initial reports as to his findings of fact and determinations of guilt. On March 30, 1992, Daniel petitioned this Court for review of the initial reports. On June 18, 1992, the petition was dismissed as premature.
A hearing to determine the appropriate disciplinary sanctions was held on December 8, 1992. Daniel renewed his objection to the referee's jurisdiction to hear the cases. After making the objection, Daniel left the hearing without making any argument as to the appropriate discipline and before the Bar presented its argument as to discipline. On January 22, 1993, the referee issued final reports recommending concurrent thirty-day suspensions[4] and assessing Daniel costs.
Daniel raises the same claims in connection with both cases. Daniel's first contention is that there is no evidence to support the referee's findings of fact. When Daniel failed to respond to the Bar's requests for admissions, the requests which contained the same facts as those alleged in the Bar's complaints were properly deemed admitted. Fla.R.Civ.P. 1.370(a); see The Florida Bar v. Greene, 515 So.2d 1280 (Fla. 1987). The matters deemed admitted pursuant to rule 1.370(a) clearly serve as substantial competent evidence supporting the referee's findings.
Daniel's next assertion, that entry of summary judgment is not authorized in disciplinary proceedings, is likewise without merit. Under Rule Regulating The Florida Bar 3-7.6(e)(1), once a formal complaint has been filed and forwarded to a referee for hearing, the Florida Rules of Civil Procedure apply except where otherwise provided in the rule. Florida Rule of Civil Procedure 1.510(c) provides for summary judgment where, as here, it is shown there is no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law.
We also reject Daniel's challenge to the summary judgments based on the Bar's alleged failure to serve Daniel with the motions for summary judgment. The motions for summary judgment, the complaints, and requests for admissions, were sent by certified mail to Daniel's record Bar address, in accordance with Rule Regulating The Florida Bar 3-7.11(b), (c). Such was all that was required to effect proper service. See The Florida Bar v. Bergman, 517 So.2d 11 (Fla. 1987). Moreover, it is apparent from the record that Daniel had actual notice of the proceedings against him.
Daniel next maintains that the referee's findings as to costs deprived him of due process and that Rule Regulating The Florida Bar 3-7.6(k)(1)(E) is unconstitutional. Daniel's contention that he was not given an opportunity to challenge or refute the costs that were assessed against him is totally without merit. Daniel appeared at the December 8, 1992 hearing at which the appropriate discipline and costs were to be addressed. However, after renewing his objection to the referee's jurisdiction, Daniel voluntarily excused himself from the hearing. *183 After Daniel left, Bar counsel made a brief argument as to the appropriate discipline and submitted a memorandum addressing discipline and costs. Daniel clearly was afforded an opportunity to be heard; the fact that he voluntarily chose not to take advantage of that opportunity does not offend due process.
We also reject Daniel's contention that the $500 charge for administrative costs provided for in rule 3-7.6(k)(1)(E) is unconstitutional because it is "a policy matter reserved for the legislative branch of the government." Under article V, section 15 of the Florida Constitution this Court has exclusive jurisdiction to discipline persons admitted to the practice of law. It follows that this Court has exclusive authority to adopt rules addressing all aspects of the disciplinary process, including the costs that can be assessed a respondent.
Daniel raises numerous arguments[5] to support his final claim that he was denied due process and equal protection throughout these proceedings. First, he maintains that he was never properly served with the complaint and the requests for admissions because neither was served after the complaint was "filed" in this Court. Rule Regulating The Florida Bar 3-7.4(j) (1990),[6] which was in effect at the time these proceedings were initiated, provides in pertinent part:
When a formal complaint by a grievance committee is not referred to the designated reviewer, or returned to the grievance committee for further action, the formal complaint shall be promptly forwarded to and reviewed by bar headquarters staff counsel who shall file the formal complaint, furnish a copy of the formal complaint to the respondent, and a copy of the record shall be made available to the respondent at his or her expense.
Rule Regulating The Florida Bar 3-7.6(g)(5)a, (1990),[7] provides:
Any pleading filed in a case prior to appointment of a referee shall be filed with the Supreme Court of Florida and shall bear a certificate of service showing parties upon whom service of copies has been made.
Neither of these rules requires that a complaint be filed with this Court prior to its service on the respondent. In fact, it would appear that rule 3-7.6(g)(5) provides for service of the complaint prior to or contemporaneous with the filing of the complaint in this Court.
Daniel's reliance on Florida Rules of Civil Procedure 1.050 and 1.070 to support his position that he was not properly served is misplaced because the Florida Rules of Civil Procedure only attach after the appointment of a referee and then apply only if no other provision in the rule provides otherwise. Rule Reg. Fla. Bar 3-7.6(e)(1). Moreover, as noted above, it is Rule Regulating The Florida Bar 3-7.11 (b), (c) that provides the procedure for effecting proper service in disciplinary proceedings.
Daniel next maintains that he was denied due process when the referee failed to give him ten days notice of the final hearing on the Bar's motions for summary judgment and motions to deem matters admitted. Reasonable notice is all that is necessary to afford due process in disciplinary proceedings. Rule Reg. Fla. Bar 3-7.11(c). Daniel acknowledges receiving the notice of hearing more than a week prior to the hearing and that he "was aware of the notice of hearing for some period of time." Because Daniel was given adequate notice of the proceedings against him the referee properly denied Daniel's motion to dismiss and motion for a continuance to give him time to respond to the motion for summary judgment.
We also find no merit to Daniel's apparent challenge to the consolidation of the disciplinary cases before the referee. He cites no authority to support his position and alleges no prejudice from the consolidation.
Daniel also contends that the referee's final reports are defective because the *184 referee failed to render his decision within six months of the June 19, 1991 order assigning a referee. At the January 14, 1992 hearing, the determination of appropriate discipline was postponed to allow for thorough argument on the issue of discipline. Daniel then sought premature review of the referee's initial reports, thus further delaying the proceedings. Daniel has alleged no prejudice from the delay; and under the circumstances, we do not believe that the delay in the filing of the final reports should render them invalid.
Daniel also faults the referee with failing to accord him the "procedural mandates" of The Administrative Procedure Act, Chapter 120, Florida Statutes. In light of this Court's exclusive jurisdiction over Bar disciplinary matters under Article V, section 15 of the Florida Constitution, the Administrative Procedure Act has no application in such cases.
Daniel's arguments that the referee did not have jurisdiction over the proceedings against him because Chapter 20, Florida Statutes grants jurisdiction of professional practices to the Department of Professional Regulation and that the Rules Regulating the Florida Bar are unconstitutional as an invalid exercise of legislative power also are totally without merit. Art. V, § 15, Fla. Const.; Rules Reg. Fla. Bar 3-1.2, 3-3.1.
Having found substantial competent evidence to support the referee's findings in both cases and no merit to Daniel's other claims, we approve the referee's findings and recommended discipline. Accordingly, William F. Daniel is suspended from the practice of law for a period of thirty days in each case. The suspensions shall run concurrently and shall be effective thirty days from the filing of this opinion to enable Daniel to close out his practice and protect the interests of his clients. If Daniel notifies this Court in writing that he is no longer practicing and does not need the thirty days to protect existing clients, this Court will enter an order making the suspension effective immediately. Daniel shall accept no new business from the date of this opinion. Judgment for costs in the amount of $1,574.54 is hereby entered against Daniel, for which sum let execution issue.
It is so ordered.
BARKETT, C.J., and OVERTON, McDONALD, SHAW, GRIMES, KOGAN and HARDING, JJ., concur.
NOTES
[1] Art. V, § 15, Fla. Const.
[2] In case no. 78,065, the referee found the following facts to be proven:

Respondent was retained by Jenea [sic] Dubois regarding personal injuries her minor daughter, Crystal Nicole Dubois, suffered in an automobile accident on June 19, 1986. During October 1988, Respondent reached a settlement of the Dubois' claims with Allstate Insurance Company through their Tallahassee counsel, Lauchlin Waldoch. On October 14, 1988, Allstate's counsel, Lauchlin Waldoch wrote to Respondent regarding the settlement and advised him that since the claimant was a minor, the settlement should require court approval and the appointment of a guardian of the property. On or about October 27, 1988 Respondent filed a petition in Leon County Circuit Court seeking approval of the settlement regarding the claim of the minor client, Nicole Dubois. Respondent failed to schedule a court date for the petition to approve the settlement and never obtained court approval of the settlement. On May 15, 1989, Lauchlin Waldoch forwarded Respondent a letter regarding the settlement and included an original release and settlement agreement with a check from Allstate Insurance Co. for $7,500.00. In Lauchlin Waldoch's letter of May 15, 1989, she requested that Respondent maintain the settlement funds in his trust account until such time as the release was executed and returned.
On May 31, 1989, Respondent had Richard Dubois and Jeana Dubois execute the settlement and release document. At the time Richard Dubois and Jeana Dubois executed the release to Allstate on May 31, 1989, Respondent had not yet obtained court approval of the settlement. After the release was executed, Respondent failed to forward the document to Lauchlin Waldoch. On June 14, 1989, Respondent deposited the Allstate settlement check for the Dubois claim into his trust account. On June 19, 1989, Respondent wrote himself a check on his trust account for $5,000.00, representing attorney fees in the Dubois claim.
During May and July, 1989 Jeana Dubois attempted without success to contact Respondent to determine when the settlement was to be finalized. Jeana Dubois executed a power of attorney in favor of Richard Dubois on July 18, 1989 to effectuate the settlement of Nicole Dubois' settlement. Richard Dubois attempted to contact Respondent regarding Nicole's settlement, and Respondent failed to return his calls. Richard Dubois subsequently hired other counsel, Bradley Monroe, to assist in getting Respondent to finalize the settlement with Allstate. Bradley Monroe received fees of $500.00 from Richard Dubois for his services. On September 13, 1989, Bradley Monroe forwarded Respondent a power of attorney authorizing Respondent to pay the settlement proceeds to Richard Dubois. On September 21, 1989, Respondent executed a trust account check to Richard Dubois in the amount of $2,500.00 representing the initial settlement proceeds for Nicole Dubois. At the time Respondent executed trust account checks to Richard Dubois and himself, Respondent had still not obtained court approval of the settlement. Respondent's original petition for approval had been dismissed for failure to prosecute. Despite disbursing the settlement proceeds Respondent had failed to return the executed release to Allstate's attorney, Lauchlin Waldoch. On October 13, 1991, Lauchlin Waldoch filed a separate petition for approval of the settlement between Nicole Dubois and Allstate. On December 5, 1989, the court approved the settlement between Nicole Dubois and Allstate.
[3] The referee made the following findings of fact in case no. 78,063:

On or about September 19, 1983, Respondent was retained by George G. and Margarete B. Miller (The Millers) to initiate foreclosure proceedings on their behalf concerning two mortgages given by Big Bend Housemovers, Inc. (Big Bend). Respondent requested and received a retainer fee of $690.00 from the Millers to institute foreclosure proceedings. The mortgages held by the Millers related to two tracts of land purchased by Big Bend on or about December 3, 1982. On or about December 1, 1982, Big Bend executed a quit claim deed to Hassler Construction, Inc. (Hassler). The Millers were notified of the change of ownership by letter from Hassler on or about June 3, 1983.
On or about September 22, 1983, Respondent filed a complaint to foreclose the above referenced mortgages against Big Bend and Hassler. A final Hearing was held on the foreclosure complaint on May 3, 1984. On June 11, 1984 a final judgment and default for foreclosure was entered by Circuit Judge Victor Cawthon against Big Bend and Hassler. The June 11, 1984 final judgment provided that unless sums due were not [sic] paid the property should be sold at public sale at 11:00 a.m. on July 11, 1984. Respondent failed to perfect the public sale ordered for July 11, 1984 after Big Bend and Hassler failed to pay the sums due on the mortgage. Respondent later filed a Motion for an Amended Final Judgment to obtain a new sale date on or about January 7, 1985.
On or about January 22, 1985, a final hearing was held on Respondent's Motion for Amended Final Judgment. On January 22, 1985 Respondent wrote the Millers advising them that the Court had granted a new public sale date for February 20, 1985, at 11:00 a.m. Respondent failed to take the necessary steps to perfect the public sale set for February 20, 1985. After Respondent failed to perfect the public sale the Millers sought a title search on the mortgaged property from Premier Title and Abstract, Inc. (Premier). On or about March 22, 1985 the Millers were notified by Premier that subsequent to the original public sale date of July 11, 1984, there were four outstanding judgments against Hassler, an assignment of mortgage from Big Bend to Citizens Commercial Bank, two federal tax liens against Hassler and property taxes for 1984 were outstanding. Respondent failed to ascertain the existence of these liens prior to filing either the original complaint or the Motion for Amended Final Judgment. Respondent failed to name any of the outstanding lienholders in any of the pleadings in this matter.
The Millers sought the help of other counsel in an attempt to complete the foreclosure begun by Respondent. On June 2, 1985, Attorney W. Kirk Brown wrote Respondent on behalf of the Millers asking that he conclude the foreclosure proceedings. Further, Respondent failed to respond to the letter of Mr. W. Kirk Brown. Respondent failed to complete the foreclosure proceedings for which he was retained by the Millers. As of July 1990, the sale had not been perfected. Respondent never asked the court for permission to withdraw from this matter. Respondent failed to advise the Millers as to the consequences of not taking this property to public sale.
[4] The Bar recommended the concurrent thirty-day suspensions and does not seek harsher discipline before this Court.
[5] A number of these arguments were raised in prior claims and will not be addressed a second time.
[6] Current rule 3-7.4(k) is substantially the same.
[7] Current rule 3-7.6(g)(5)(A) is substantially the same.