796 P.2d 1108

**STATE of New Mexico,
Plaintiff–Appellee,**

v.

**Robert CRISLIP, Defendant–Appellant.**

**No. 11411.**

Court of Appeals of New Mexico.

April 26, 1990.

Certiorari Denied June 19, 1990.

**414**

Ellen Bayard, Santa Fe, for defendant-appellant.

Hal Stratton, Atty. Gen. and William McEuen, Asst. Atty. Gen., Santa Fe, for plaintiff-appellee.

## OPINION

HARTZ, Judge.

Defendant appeals his conviction by a jury of child abuse resulting in death. NMSA 1978, § 30–6–1 (Repl.Pamp.1984). He raises the following contentions on appeal: (1) the trial court erred in upholding the assertion of a fifth amendment privilege by defendant's wife, who at the time was appealing her own conviction of the same offense in a prior trial; (2) the state's failure to grant use immunity to defendant's wife constituted plain error; (3) the admission at his trial of a recording of the testimony of defendant's wife at her own trial was error because the testimony had been coerced; (4) the admission of the prior testimony of defendant's wife violated defendant's right of confrontation; (5) the trial court erred in not permitting defendant to question his wife before the jury and in admitting the prior testimony of defendant's wife without advising the jury that she had been convicted for child abuse; (6) the trial court erred in refusing defendant's tendered instructions and in submitting its own instruction defining the word "permit" in the child-abuse statute; (7) the trial court should have granted a mistrial because of the prosecutor's allegedly inflammatory question to defendant; (8) defendant was denied his right to effective assistance of counsel; and (9) the child-abuse statute is unconstitutional. We affirm defendant's conviction.

## I. TESTIMONY OF DEFENDANT'S WIFE

We first discuss defendant's five appellate issues relating to testimony by his wife.

Defendant and his wife were each charged with child abuse resulting in the death of defendant's stepson. Defendant and his wife were tried separately. We need not recite the evidence, except to state that it revealed multiple injuries to the child, the only questions being when and how the injuries were inflicted.

The prosecution called defendant's wife as a witness. Outside the presence of the jury she stated her intention to invoke her privilege against self-incrimination. When the trial court upheld the claim, the prosecutor was permitted to play for the jury a recording of her testimony at her own trial.

### A. *Privilege Against Self–Incrimination*

■ Although defendant's wife had testified in her defense at her own trial, under New Mexico law she did not thereby waive her right to claim the privilege at defendant's trial. In *Apodaca v. Viramontes*, 53 N.M. 514, 212 P.2d 425 (1949), the state claimed that a witness who had testified before the grand jury could not claim the privilege against self-incrimination when called to give identical testimony at trial.

The court rejected the state's position, adopting the following statement of the law:

"A person who has waived his privilege of silence in one trial or proceeding is not estopped to assert it as to the same matter in a subsequent trial or proceeding. The privilege attaches to the witness in each particular case in which he may be called on to testify, and whether or not he may claim it is to be determined without reference to what he said when testifying as a witness on some other trial, or on a former trial of the same case, and without reference to his declarations at some other time or place."

*Id.* at 524, 212 P.2d at 431 (quoting 58 Am.Jur. § 99, at 82 [81 Am.Jur.2d *Witnesses* § 65 (1976)]). A more recent decision in another jurisdiction has adopted the same principle in circumstances virtually identical to those here. In *Ottomano v. United States*, 468 F.2d 269 (1st Cir.1972), *cert. denied*, 409 U.S. 1128, 93 S.Ct. 948, 35 L.Ed.2d 260, *reh'g denied*, 410 U.S. 948, 93 S.Ct. 1383, 35 L.Ed.2d 616 (1973), a witness who had been convicted and sentenced after testifying at his own trial was called to testify as a witness at the trial of his alleged co-conspirator. The court upheld the witness's claim of a fifth amendment privilege.

Perhaps defendant's wife could have been asked certain questions that had no potential to elicit incriminating responses; but defendant's counsel declined the trial court's offer to ask defendant's wife questions out of the presence of the jury, so we have no record upon which to make a finding that the claim of privilege was improper in any particular.

Although defendant's wife had already been tried and convicted, her conviction was being reviewed on appeal. Given the possibility of reversal (which was, in fact, the result of her appeal), courts overwhelmingly hold that the claim of privilege may be raised while a direct appeal is pending. *See Ellison v. State*, 310 Md. 244, 528 A.2d 1271 (1987) (collecting cases).

■ Defendant argues that the trial court should not have been concerned about erroneously compelling his wife to testify, because if the compulsion was improper, the evidence could not be used at any subsequent criminal proceedings against her. *See State v. Archunde*, 91 N.M. 682, 579 P.2d 808 (Ct.App.1978); SCRA 1986, 11–512. In substance what defendant is arguing is that the trial court was compelled to grant defendant's wife immunity from use against her of any testimony she gave at his trial. The trial court, however, has no such authority. The grant of immunity to a witness is, absent prosecutorial misconduct in deliberately intending to disrupt the fact-finding process, within the sole control of the prosecution. *See State v. Sanchez*, 98 N.M. 428, 649 P.2d 496 (Ct.App.1982).

In his second appellate contention defendant argues that there was such prosecutorial misconduct and therefore the state had an obligation to grant his wife immunity from use against her of her testimony in his trial. We reject this contention.

■ First, the record does not compel us to find that the prosecutor's failure to grant immunity was for improper reasons. On the contrary, the state's failure to grant immunity does not in itself establish bad faith. Given the obvious difficulties of proving at a later trial of defendant's wife that the later trial had not been tainted by indirect prosecutorial use of immunized testimony, *see* 2 P. Robinson, *Criminal Law Defenses* § 205(c) (1984), the state's failure to volunteer to grant immunity is understandable. In addition, the state's willingness to admit her prior testimony (discussed in the next section of this opinion) indicates that the state was not trying to distort the fact-finding process, particularly since defendant made no suggestion, much less an offer of proof, of what defendant's wife would testify to that was not contained in her prior testimony.

■ Moreover, this appellate contention was waived at trial. Although defendant argues that the state's failure to grant immunity to the witness was plain error, *see* SCRA 1986, 11–103(D) or fundamental error, *see* SCRA 1986, 12–216, this would

be a highly inappropriate circumstance in which to apply either doctrine. During argument at trial concerning the claim of privilege by defendant's wife, defense counsel stated, "I don't think the State has to offer immunity." We would only be encouraging sharp practices if we permitted a defendant to waive a claim explicitly, take his chances at trial, and then rely on plain or fundamental error in the event of an adverse verdict.

### B. *Admissibility of Testimony from Prior Trial*

■ After the trial court upheld the claim of privilege by defendant's wife, the state played for the jury portions of a tape recording of her testimony at her own trial. As the state pointed out in offering the testimony, the testimony was not admissible under any recognized exception to the hearsay rule. Because defendant's counsel had not had an opportunity to cross-examine defendant's wife at her trial, the requirements for admission of former testimony were not satisfied. *See* SCRA 1986, 11–804(B)(1). Defendant now includes among his appellate issues the contentions that: (1) the taped testimony was inadmissible because his wife's testimony at her own trial was coerced; and (2) the use of her testimony violated his right of confrontation.

We need not consider these appellate contentions, however, because they were waived below. *See* R. 11–103(A)(1). Defense counsel made quite clear to the trial court that if defendant's wife was permitted to invoke her privilege against testifying at his trial, he wished the tape recording of her testimony at her own trial to be played to the jury. At a hearing on the day of trial, defense counsel stated:

> I propose to put [defendant's wife] on the stand; and if she refuses to answer any questions, I do have the tapes from the last trial, your Honor. I propose to ask that the court allow her prior testimony as prior recorded testimony as an exception to that rule, the hearsay rule, or any rule of self-incrimination.

Later that day, after the trial court ruled on the claim of privilege, defense counsel stated:

> In light of the court's ruling that [defendant's wife] will be taking the fifth and using her constitutional privilege, we are going to play the tapes of her prior recorded testimony, which I *per se* am not objecting to. However, at this time Judge, just for the record, I would like to make a motion for a continuance at this time, that I feel I am being denied my effective right of cross-examination of the defendant [sic] and that if she's an absent defendant [sic], then my client is losing his constitutional right of confrontation against the witnesses against him and of his own witnesses, for that fact, Judge, just for the record, I do make a motion for a continuance at this time.

There is no question that defense counsel failed to raise any claim relating to the involuntariness of the testimony from the prior trial. As for the claim of denial of confrontation, defendant's brief-in-chief acknowledges that the request for a continuance was apparently to await the determination of the appeal of defendant's wife, since affirmance of her conviction would eliminate the possibility of future incrimination by her testimony. Thus, counsel's reference to the right of cross-examination and right of confrontation presumably relate to a claim that the trial should be continued with the hope that at a later time he would be able to cross-examine defendant's wife in the absence of any claim of privilege. The comments of defense counsel cannot reasonably be construed as objecting to the use of the tape recording if defendant's wife was not going to testify. If defendant had wished to object to use of the tape recording on grounds of violation of the right to confrontation or of hearsay rules, it would have been easy for him to do so. Only a few minutes earlier the prosecutor had stated:

> We take the position that even though the requirements of the rule on prior sworn testimony are not met in this case, by a long shot, that if the court were to give the jury a cautionary instruction as

to the nature of this testimony, that we can deal with that subject.

Rather than referring to that clearly winning argument against use of the taped testimony, defense counsel stated, and we repeat, "we are going to play the tapes of her prior recorded testimony, which I *per se* am not objecting to."

In short, we have no doubt that defense counsel made the tactical decision that, in the absence of live testimony by defendant's wife, the prior testimony of his wife would be advantageous to defendant. In that circumstance, we will not find plain error or fundamental error, even though the evidence would have been inadmissible if either party had objected. *See* 1 D. Louisell & C. Mueller, *Federal Evidence* § 21, at 127 (1979) ("If the record clearly reflects or even just smacks of a strategic decision of trial counsel not to object, reversal for plain error is unlikely.").

### C. Questioning Defendant's Wife Before Jury and Advising Jury of Her Prior Conviction

In an effort to deflect blame onto his wife, defendant sought (1) to require her to invoke her privilege against self-incrimination in the presence of the jury and (2) to offer evidence of her prior conviction.

■ He contends that his right to due process was violated by the trial court's refusal of his request to call his wife as a witness and question her before the jury, even though she intended to invoke the privilege against self-incrimination. The sole purpose of such a procedure, however, would be to enable the jury to draw an inference of defendant's innocence from the claim of self-incrimination by his wife. Such inferences are not permissible. *See* SCRA 1986, 11–513(A). For that reason, the rules provide that claims of privilege should be made outside the presence of the jury, to the extent practicable. R. 11–513(B). The trial court correctly denied defendant's request.

■ Defendant also complains that he was precluded from introducing the fact of her prior conviction. On appeal he contends that evidence of the prior conviction would have been admissible to impeach her credibility. At trial, however, defendant sought admission of the prior conviction solely for the purpose of establishing that his wife was guilty of the crime with which he was charged. The trial court properly ruled that her conviction was not relevant for that purpose. *See, e.g., Bridge v. Lynaugh*, 838 F.2d 770 (5th Cir.1988); *State v. Corrales*, 131 Ariz. 471, 641 P.2d 1315 (Ct.App.1982). Because defendant did not argue at trial that the conviction was admissible for impeachment purposes (perhaps because he wanted the jury to believe the testimony), we will not consider that issue on appeal. *See State v. Doran*, 105 N.M. 300, 731 P.2d 1344 (Ct.App.1986).

## II. INSTRUCTIONS

■ The pertinent statutory language reads:

C. Abuse of a child consists of a person knowingly, intentionally or negligently, and without justifiable cause, causing or permitting a child to be:

(1) placed in a situation that may endanger the child's life or health; or

(2) tortured, cruelly confined or cruelly punished;

(3) exposed to the inclemency of the weather.

§ 30–6–1(C).

The trial court submitted a definitional instruction stating:

"Permit" as used in these instructions means:

vt 1: to consent to expressly or formally

2: to give leave: AUTHORIZE

3: to make possible vi: to give an opportunity

(We assume that "vt" means "transitive verb" and "vi" means "intransitive verb"; but the instructions do not define the abbreviations.) The trial court rejected defendant's requested instruction No. 1, which read:

The term, "permit", as used in these instructions means "to give permission to"; "to authorize"; "to grant by express consent".

Defendant makes no claim that he objected to the trial court's definitional instruction.

The trial court's denial of defendant's requested instruction No. 1 was proper. Defendant's definition of the term "permit" is too narrow. It encompasses only affirmative, or active, consent; it does not include passive consent—permitting through inaction. Yet our cases establish that passive permission is encompassed by the statute.

In *State v. Adams*, 89 N.M. 737, 738, 557 P.2d 586, 587 (Ct.App.1976), we affirmed defendant's conviction for child abuse resulting in the death of his daughter on the ground that the evidence "permits the inference that [defendant] did not act as a reasonably prudent person in failing to take action in connection with the abuse [committed by his wife]." The court noted that the defendant, as a parent, had a duty to care for the infant child and knew of the abuse being committed. His testimony showed that he took no action to care for the child; he admitted "having discussed some of the 'marks' with [his wife], [but] felt that [his wife] was a good mother and attributed most of the bruises and injuries to [the child's] play with her older brother." *Id.*

In *State v. Leal*, 104 N.M. 506, 510, 723 P.2d 977, 981 (Ct.App.1986), in which we reversed a conviction for child abuse resulting in death because of insufficient evidence to sustain the verdict, we nevertheless stated, " '[P]ermit' refers to the proscribed act, the passive act of allowing the abuse to occur."

Because defendant's requested instruction No. 1 does not encompass passive permission, it was misleading and should not have been given. *See State v. Sparks*, 102 N.M. 317, 694 P.2d 1382 (Ct.App.1985) (requested instruction properly refused when it sets forth a more exacting requirement than the statute).

Although defendant's brief-in-chief claims that the trial court's instruction defining "permit" is incorrect, he does not refer to any place in the record where he objected to the instruction, other than the implicit objection contained in his submission of his own requested instruction on

this subject. We need not decide whether such an implicit objection is sufficient to preserve error. *See* SCRA 1986, 5–608(D). We reject his claim that defining "permit" to include "to make possible" or "to give an opportunity" improperly broadens the statutory definition. *Adams* and *Leal* support the trial court's instruction.

■ Defendant also complains of the rejection of his requested instruction No. 2, which states, "Normal parental action or inaction is not abuse." Yet insofar as the requested instruction accurately stated the law, it was already covered by the trial court's instruction stating the elements of the offense and the instruction defining "intentionally" and "negligently." In particular, the trial court instructed the jury that "[a] person acts negligently when he does an act which a reasonably prudent person would foresee as involving an unreasonable risk of injury to another and which such person, in the exercise of ordinary care, would not do." If the jury had found that defendant had acted as a reasonably prudent parent, it could not have followed the trial court's instructions and still convicted defendant of the crime. Therefore, defendant's requested instruction No. 2 was properly rejected by the trial court. *See State v. Sparks* (court does not err in refusing a requested instruction if the subject matter of the instruction is adequately covered by other instructions).

## III. ALLEGED IMPROPER QUESTIONING OF DEFENDANT BY PROSECUTOR

While the prosecutor was cross-examining defendant concerning whether he could have diapered the baby with one hand, the trial court sustained an objection to the questioning, stating that "we've gone into that diaper enough." The prosecutor then asked, "Isn't that just another lie, Mr. Crislip?" Defense counsel objected and the trial court ruled that there would be no more questions on the subject. The court, however, denied defense counsel's motion for a mistrial.

The trial court has wide discretion to control examination by counsel to prevent harassment of witnesses and inflaming the jury. *See* SCRA 1986, 11–611(A); *State v. Smith*, 92 N.M. 533, 591 P.2d 664 (1979); *State v. Davis*, 92 N.M. 563, 591 P.2d 1160 (Ct.App.1979); 3 D. Louisell & C. Mueller, *supra*, § 334. We see no abuse of discretion in this case in the trial court's warning counsel but not declaring a mistrial. The question had a factual basis. Defendant had previously testified that he had falsely pleaded guilty to another charge in order to get out of jail. It is not error per se to ask a witness if he is lying. *Cf. State v. Mitchell*, 317 N.C. 661, 667, 346 S.E.2d 458, 462 (1986) ("'Took you a while to dream all that stuff up, too, didn't it?'").

## IV. INEFFECTIVE ASSISTANCE OF COUNSEL

Defendant claims that if we hold that his trial counsel waived objection to the admissibility of his wife's prior testimony, then such waiver constituted ineffective assistance of counsel. His counsel's decision, however, was clearly a tactical one. The record establishes that defense counsel's decision not to object to the taped testimony was a considered judgment, not an oversight. We have reviewed the summaries of the evidence provided by counsel in their briefs and find that the tactical decision was not so patently inconsistent with competent representation as to constitute ineffective assistance of counsel. *See State v. Talley*, 103 N.M. 33, 702 P.2d 353 (Ct.App.1985).

## V. CONSTITUTIONALITY OF STATUTE

Defendant also contends that the statute under which he was convicted is unconstitutional because it imposes lengthy sentences based upon strict liability and because civil, not criminal, negligence standards are applied in determining guilt. As he acknowledges, however, our precedents are to the contrary. *See State v. Lucero*, 87 N.M. 242, 531 P.2d 1215 (Ct.App.1975). *Cf. State v. Coe*, 92 N.M. 320, 587 P.2d 973

(Ct.App.1978) (statute is not unconstitutionally vague).

## VI. CONCLUSION

We affirm defendant's conviction.

IT IS SO ORDERED.

ALARID and APODACA, JJ., concur.