710 So.2d 13 (1998)
The STATE of Florida, Appellant,
v.
John SPIEGEL, Appellee.
No. 97-1341.
District Court of Appeal of Florida, Third District.
March 4, 1998.
Rehearing Denied June 10, 1998.
*14 Robert A. Butterworth, Attorney General, and Mark Rosenblatt, Assistant Attorney General, for appellant.
James K. Beckham, Miami, for appellee.
Before GERSTEN, FLETCHER and SHEVIN, JJ.
PER CURIAM.
Appellant, the State of Florida, appeals a county court order in a criminal proceeding granting the suppression of an attorney's statements made during Florida *15 Bar disciplinary proceedings. We affirm concluding that an attorney's statements made during a Florida Bar Grievance Committee interview do not operate as a testimonial waiver of the Fifth Amendment privilege against self-incrimination for the purpose of offering such statements in a subsequent criminal proceeding as direct evidence of guilt.
This case emanates from a divorce maelstrom between two attorneys. Appellee, John Spiegel ("Spiegel"), worked for thirteen years as a police officer prior to becoming an attorney. He filed for divorce against Karen Haas ("Haas"), a former prosecutor, in 1994.
In the Spring of 1995, Haas filed a complaint against Spiegel with The Florida Bar. Disciplinary proceedings were commenced and Spiegel responded in writing as required.[1] Spiegel was then asked to submit to an interview by The Florida Bar Grievance Committee member assigned to the case.[2] Spiegel complied and made the oral statements at the interview which are the subject of the suppression order on appeal.
Thereafter, in September of 1995, an exparte injunction for protection against domestic violence was issued against Spiegel. The 15-day temporary injunction restrained Spiegel from abusing or harassing Haas, or from contacting her either directly or indirectly. On February 7, 1996, at Haas' urging, the Dade County State Attorney's Office filed a misdemeanor information against Spiegel accusing him of violating the temporary injunction by telephoning, contacting or communicating with Haas, directly or indirectly.
After these charges were filed, the Bar Grievance Committee held a hearing regarding the grievance complaint against Spiegel. Spiegel was advised of his Fifth Amendment rights at the hearing and declined to speak about the misdemeanor charge.
In August of 1996, the State decided to forego the misdemeanor charge and filed a petition for rule to show cause. The petition expanded the accusations against Spiegel to include "abuse and harassment" by unlawfully contacting Haas through the mail between September 7, 1995 and December 12, 1995. The court issued a rule to show cause prompting Spiegel to seek suppression of the statements he made at the Bar Grievance interview.
At the hearing on Spiegel's motion to suppress, Spiegel explained that, as a former police officer, he was familiar with the "Garrity" rule. The "Garrity" rule prevents statements made in disciplinary investigations under threat of dismissal from being used as evidence in a subsequent criminal prosecution. See Garrity v. State of New Jersey, 385 U.S. 493, 87 S.Ct. 616, 17 L.Ed.2d 562 (1967).[3] Spiegel feared he would lose his license to practice law if he did not agree to the grievance interview and believed he was required to answer questions under Bar rules. Spiegel further stated he would not have agreed to the interview had he known *16 responses to questions were not required. The grievance committee member never advised Spiegel that he had the right not to meet with her or that he had the right not to respond.
The county court found that both the grievance committee member and Spiegel believed Bar rules required Spiegel to respond to the committee member's questions verbally and in writing. It further determined that Spiegel submitted to the interrogation because he believed that failure to respond or cooperate would result in disbarment.
The county court granted the motion to suppress finding that the statements were made in violation of Spiegel's privilege against self-incrimination. The county court then certified to this Court as a question of great public importance the legal issue of whether statements made by an attorney at a Florida Bar interview, when the attorney believes he is compelled to answer, may be suppressed in a subsequent criminal prosecution as a violation of the privilege against self-incrimination. We answer the certified question affirmatively.
The Fifth Amendment privilege against self-incrimination is to be liberally construed and may be invoked as long as a reasonable possibility of prosecution exists for crimes suggested by the response. See Maness v. Meyers, 419 U.S. 449, 95 S.Ct. 584, 42 L.Ed.2d 574 (1975); Zicarelli v. New Jersey State Comm'n of Investigation, 406 U.S. 472, 92 S.Ct. 1670, 32 L.Ed.2d 234 (1972); Marchetti v. United States, 390 U.S. 39, 88 S.Ct. 697, 19 L.Ed.2d 889 (1968); Hoffman v. United States, 341 U.S. 479, 71 S.Ct. 814, 95 L.Ed. 1118 (1951). The privilege extends to attorneys, and an attorney may not be disbarred for invoking the privilege in bar disciplinary proceedings. See Spevack v. Klein, 385 U.S. 511, 87 S.Ct. 625, 17 L.Ed.2d 574 (1967).[4] As noted by the trial judge in his suppression order, an attorney has "a right to take refuge under the Fifth Amendment if his answer would tend to incriminate him." Sheiner v. State, 82 So.2d 657, 661 (Fla.1955). See DeBock v. State, 512 So.2d 164 (Fla.1987); In re Shearer, 377 So.2d 970 (Fla.1979).
The right to assert the privilege must be specifically invoked and may be waived in a particular proceeding by testimony without objection. See Black v. State Bar of California, 7 Cal.3d 676, 103 Cal.Rptr. 288, 499 P.2d 968 (1972); State ex. rel. Arnold v. Revels, 100 So.2d 51 (Fla.1957); Hargis v. Florida Real Estate Comm'n, 174 So.2d 419 (Fla. 2d DCA 1965); In re Zisook, 88 Ill.2d 321, 58 Ill.Dec. 786, 430 N.E.2d 1037 (1981); Mississippi State Bar v. Attorney-Respondent in Disciplinary Proceedings, 367 So.2d 179 (Miss.1979). However, because the right to be free from self-incrimination is a fundamental principle secured by the Fifth Amendment, waiver of the privilege will not be lightly inferred, and courts will generally indulge every reasonable presumption against finding a waiver. See Smith v. United States, 337 U.S. 137, 69 S.Ct. 1000, 93 L.Ed. 1264 (1949).
More importantly for purposes of this case, waiver by testimony of the Fifth Amendment privilege is generally limited to the particular proceeding in which the witness volunteered the testimony. See United States v. James, 609 F.2d 36, 43 (2d Cir. 1979); United States v. Larry, 536 F.2d 1149, 1155 (6th Cir.); Ottomano v. United States, 468 F.2d 269, 273 (1st Cir.1972); United States v. Miranti, 253 F.2d 135, 139 (2d Cir.1958); United States v. Field, 193 F.2d 109, 110 (2d Cir.1951). In other words, waiver of the privilege in one proceeding does not affect the right of a witness or accused to invoke the privilege as to the same subject matter in another independent proceeding. See Commonwealth v. Martin, 423 Mass. 496, 668 N.E.2d 825 (1996); Commonwealth v. Dormady, 423 Mass. 190, 667 N.E.2d 832 (1996); State v. Settle, 132 N.H. 626, 570 A.2d 895 (1990); State v. Crislip, 110 N.M. 412, 796 P.2d 1108 (1990); State v. Whiting, *17 136 Wis.2d 400, 402 N.W.2d 723 (1987); 8 John H. Wigmore, Evidence § 2276, 456-75 (McNaughton rev. ed. 1961 & Supp.1997); McCormick, Handbook of the Law of Evidence §§ 132, 141, at 281, 296-99 (2d ed.1972).[5]
Thus, the fact that an attorney testifies at a Bar grievance procedure without asserting the privilege, does not constitute a waiver of the attorney's right to assert the privilege in another forum. Clearly then, Spiegel has the right to assert his Fifth Amendment privilege in the subsequent criminal proceeding. But that right is meaningless if Spiegel's prior statements are still admissible.
Florida courts have not addressed whether an attorney's assertion of the privilege against self-incrimination in a subsequent proceeding renders inadmissible prior statements made during a grievance proceeding. Other courts have held that a defendant's prior voluntary statement is admissible in subsequent prosecutions solely for purposes of impeachment. See Simmons v. United States, 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968); People v. Douglas, 66 Cal. App.3d 998, 136 Cal.Rptr. 358 (1977); People v. Sturgis, 58 Ill.2d 211, 317 N.E.2d 545 (1974).[6]
None of these cases involved an attorney, nor statements made at an interview during the course of a Bar grievance proceeding. Unlike the cases above, this case requires us to consider the privilege in the context of rules intended to protect the public interest. The grievance procedures established by the Florida Bar assure the integrity and evenhandedness of the administration of justice by requiring officers of the court to provide information pertinent to their professional and moral qualifications.
Primarily, we are concerned that a ruling allowing such statements to be admissible would interfere with the Bar's truth-seeking and disciplinary functions. Bar Grievance proceedings play an important role in protecting the public from improper professional conduct by attorneys. In order to carry out this important function, grievance committee members must be able to conduct meaningful investigations to ascertain all facts relating to the grievance. Requiring an attorney to plead the Fifth as soon as possible in order to preserve the privilege would directly conflict with the Bar Grievance committee's truth-seeking function.
Furthermore, admitting such statements in subsequent criminal proceedings undercuts the effectiveness of the well-established rule that waiver of the Fifth Amendment privilege is limited to the particular proceeding in which the waiver occurs. We are concerned that lawyers will be confronted with the Hobson's choice between self-incrimination and potential disbarment. "Where the choice is between the rock and the whirlpool, duress is inherent in deciding to waive one or the other." Garrity, 385 U.S. at 498, 87 S.Ct. at 619.
We are also disturbed from a fundamental fairness perspective by the unique circumstances of this case. At the time Spiegel made the statements, he was not charged *18 with a crime and was not represented by counsel. Moreover, both Spiegel and the committee member testified they believed Spiegel was compelled to answer all questions posed during the interview. Yet once charges were filed and Spiegel was advised of his rights at the Bar committee hearing, Spiegel promptly asserted his Fifth Amendment privilege. We find the reasons advanced for admitting such statements decisively less persuasive as applied to the facts of this case, where the disclosures were made during a grievance interview prior to criminal charges being filed and under the presumption that answers were required.
In sum, to admit such statements under these circumstances would not only adversely affect the truth-seeking function of the grievance committee to protect the public, such a ruling would negatively infringe upon the fundamental privilege of a witness to refrain from answering self-incriminating questions. Consistent with the spirit of the privilege, we conclude that Spiegel's statements during the Florida Bar grievance committee interview are not admissible as direct evidence of guilt in the subsequent criminal prosecution. Accordingly, we affirm the order granting suppression.
Affirmed.
NOTES
[1] The Rules Regulating the Florida Bar specifically require an attorney against whom a complaint has been filed to answer the complaint. R. Regulating Fla. Bar 3-7.6(g)(2). Failure to respond may subject the attorney to disciplinary action. See Florida Bar v. Daniel, 626 So.2d 178 (Fla.1993); In re Moes, 389 Mich. 258, 205 N.W.2d 428 (1973); Committee on Prof. Ethics & Conduct of the Iowa State Bar Ass'n v. Horn, 379 N.W.2d 6 (Iowa 1985).
[2] Rule 3-7.4 of the Rules Regulating the Florida Bar governs grievance committee procedures. After receiving a complaint regarding an attorney's conduct, Bar counsel may refer the complaint to a grievance committee for further investigation. R. Regulating Fla. Bar 3-7.3(f). The grievance committee is required to consider all charges of misconduct and may appoint a bar committee member to assist in conducting an investigation and preparing reports for the committee. R. Regulating Fla. Bar 3-7.4(c),(f). Rule 3-7.4(h) provides that the respondent attorney "may be required to testify and to produce evidence as any other witness unless the respondent claims a privilege or right properly available to the respondent under applicable federal or state law."
[3] In Garrity, the United States Supreme Court preserved Fifth Amendment protections for police officers by holding that statements made by policemen under threat of dismissal involuntary, and therefore could not be used against the policemen in subsequent criminal prosecutions. The Court reasoned that the option given the policemen of either losing their jobs or incriminating themselves "is the antithesis of free choice to speak out or to remain silent." Garrity, 385 U.S. at 497, 87 S.Ct. at 618.
[4] In Spevack, the United States Supreme Court reversed an order disbarring an attorney who had failed to produce subpoenaed financial records and refused to testify before the inquiring tribunal. The Court held that the Fifth Amendment extended to lawyers as well as laymen, and that "it should not be watered down by imposing the dishonor of disbarment and the deprivation of a livelihood as a price for asserting it." Spevack v. Klein, 385 U.S. at 514, 87 S.Ct. at 627.
[5] As explained in Wigmore on Evidence:

The waiver involved is limited to the particular proceeding in which the witness volunteers the testimony or the accused takes the stand.... His voluntary testimony before a coroner's inquest, or a grand jury, or other preliminary and separate proceeding, e.g. in bankruptcy, is therefore not a waiver for the main trial. Nor is his testimony at a first trial a waiver for a later trial.
8 John H. Wigmore, Evidence § 2276, at 470-72 (McNaughton rev. ed. 1961 & Supp.1997).
[6] These cases hold that prior statements may not be used against a defendant in a subsequent proceeding as evidence of guilt unless the defendant does not object. In Simmons, the United States Supreme Court held that a defendant's testimony in support of his motion to suppress evidence on Fourth Amendment grounds could not thereafter be admitted against him at trial on the issue of guilt. See Simmons v. United States, 390 U.S. at 394, 88 S.Ct. at 976. The Court reasoned that a rule requiring a defendant to testify at a pretrial suppression hearing in order to assert his Fourth Amendment claims created an unconstitutional "tension" with the defendant's Fifth Amendment privilege against selfincrimination since "a defendant who knows that his testimony may be admissible against him at trial will sometimes be deterred from presenting the testimonial proof of standing necessary to assert a Fourth Amendment claim." Simmons v. United States, 390 U.S. at 392-93, 88 S.Ct. at 975.