CARLTON MARTIN *v.* WALTER FLANAGAN,
STATE'S ATTORNEY
(SC 16453)

Norcott, Katz, Palmer, Vertefeuille and Zarella, Js.

488

Argued December 5, 2001—officially released February 19, 2002

*Jonathan K. Gable*, certified legal intern, with whom was *Kent Drager*, senior assistant public defender, for the plaintiff in error.

*James Ralls*, assistant state's attorney, with whom, on the brief, were *Walter Flanagan*, state's attorney, and *David Shannon*, assistant state's attorney, for the defendant in error.

*Opinion*

KATZ, J. The dispositive issue in this writ of error is whether, pursuant to General Statutes § 51-33,[1] the trial court improperly rejected the assertion by the plaintiff in error, Carlton Martin (plaintiff), of his fifth amendment privilege not to testify and improperly held him in contempt for refusing to answer questions at the criminal trial of a codefendant based on the plaintiff's previous waiver of the privilege at his own criminal trial.

The record discloses the following undisputed facts. In connection with the death of Bobbie Gallo during an alleged armed robbery at Gallo's Liquor Store in Danbury on January 18, 1999, the plaintiff was charged with and convicted of felony murder in violation of General Statutes § 53a-54c, first degree robbery in violation of General Statutes § 53a-134 (a) (2), and five counts of tampering with a witness in violation of General Statutes § 53a-151 (a). Following his sentence to a total effective sentence of ninety years imprisonment, the plaintiff appealed from the judgment of conviction to this court. That appeal is still pending.[2]

Thereafter, in connection with the same events, the state proceeded to trial in the case against the plaintiff's codefendant, Tommie Martin, charging that he had conspired with the plaintiff to commit robbery in the first

[1] General Statutes § 51-33 provides: "Any court, including a family support magistrate, may punish by fine and imprisonment any person who in its presence behaves contemptuously or in a disorderly manner; but no court or family support magistrate may impose a greater fine than one hundred dollars or a longer term of imprisonment than six months or both."

[2] The appeal of the plaintiff's criminal conviction pending in this court is captioned *State* v. *Martin*, Docket No. SC 16448.

degree. During that trial, the state filed a motion to compel the plaintiff's testimony, contending that, because he previously had waived the fifth amendment privilege against self-incrimination during his own trial, at which he was convicted of charges arising from Gallo's homicide, the privilege was no longer viable. In response, the plaintiff filed a brief raising essentially four arguments in opposition to the state's motion. First, the plaintiff claimed that he retained the right to invoke his fifth amendment privilege at Tommie Martin's trial because that proceeding was separate from his own criminal trial. Second, the plaintiff maintained that, because his judgment of conviction was on appeal, it was not yet final, and consequently, if his conviction were to be overturned, anything that he stated in the trial of Tommie Martin could be used against him at his retrial. Third, the plaintiff contended that he was entitled to invoke his privilege against self-incrimination based upon his legitimate concern that the testimony that the state sought to compel might furnish a link in the chain to other evidence supporting charges against him either for having committed perjury in his previous testimony or for having given a false sworn statement to the police, or for both. Finally, the plaintiff argued that he was entitled to invoke his fifth amendment privilege because the testimony the state possibly would seek to elicit could expose him to prosecution for other offenses, including conspiracy.

The court permitted the state to call the plaintiff as a witness at Tommie Martin's trial, but ordered that the initial questioning take place outside the presence of the jury. Before the state began its questioning, the trial court advised the plaintiff "that in regard to . . . your testimony connected to the January 18, 1999 robbery and shooting at Gallo's Liquor Store, you don't have a fifth amendment privilege. And, I'm ordering you to answer questions that are put to you. If you fail to

answer appropriate questions, then I'm going to hold you in contempt of court and give you a jail sentence, which will be consecutive to the time you've already gotten. You have your lawyer sitting next to you. If you feel or he feels that some question might elicit information that's incriminating in another case or another crime, and I believe that's appropriate, then I'll make a decision about whether you should . . . answer those questions. OK? But, I'm telling you that you have to testify here. If you don't, you may be found in contempt of court and get an additional jail sentence."

Following some preliminary questions, the state asked the plaintiff the following question: "Did you go to 32 Fairfield Ridge in Danbury, Connecticut in the early morning hours of January 18, 1999?" When the plaintiff refused to answer, the court found him in contempt and sentenced him to six months imprisonment. The state then asked the plaintiff whether he had "testif[ied] previously that [he], Tommie Martin, and Nicole Harris drove to the BP gas station on January 18, 1999, in the early morning hours?" He again refused to answer, resulting in a second contempt finding and an additional sentence of six months imprisonment.

The court thereafter cautioned the plaintiff: "I'm going to remind you once again, you do not have a fifth amendment privilege in regard to the events of January 18, 1999, at Gallo's Liquor Store, and I'm warning you to testify, and if you don't, I'm going to hold you in contempt of court." Thereafter, the state asked the plaintiff a series of questions, to which the plaintiff again invoked his privilege against self-incrimination and refused to answer. The questions were as follows: (1) "[D]id Tommie Martin, your cousin, come out of the house when you pulled up—when you got to 32 Fairfield Ridge?"; (2) "Tommie [Martin] was with you at this time, wasn't he?"; (3) "Did you change your story

and tell [Detective Daniel Trompetta of the Bridgeport police department] that you were with Tommie Martin at the BP gas station next to Gallo's [Liquor Store]?"; (4) "[D]id you testify previously at your trial that you initially didn't tell [Detective] Trompetta that you were with Tommie Martin because you wanted to protect him?"; (5) "[D]id you tell the police that Tommie Martin wasn't there in order to protect him?"; (6) "Did you testify previously that you . . . initially told the police Tommie [Martin] wasn't there in order to protect him? Did you testify to that?"; (7) "[W]as [the .25 caliber Titan handgun, the alleged murder weapon] in your apartment in early January—when it was in your apartment in early January of 1999, was Tommie Martin in the apartment [at] the same time?"; and (8) "These [letters that were being shown by the state] are the letters that Tommie Martin gave you while you [and he] were incarcerated together at Walker correctional facility. Isn't that correct?" Each time the plaintiff refused to answer a question, the court ordered him to answer and held him in contempt of court for thereafter refusing. The court imposed a fine each of the eight times it held the plaintiff in contempt. See footnote 3 of this opinion.

Later that afternoon, the state called the plaintiff as a witness before the jury. During his testimony, the plaintiff invoked the privilege against self-incrimination eight more times in response to the following questions: (1) "[W]hen you saw [the gun that was the alleged murder weapon] in your apartment in early January of 1999, was . . . Tommie Martin . . . present at the time?"; (2) "[H]ave you testified previously that that gun was in your apartment at the same time Tommie Martin was in your apartment?"; (3) "Did you testify previously that [Tommie Martin] didn't have a ride in a prior court proceeding?"; (4) "Did you testify previously . . . that when you got to [Harris'] house, that

Tommie Martin was coming out of the house. Did you testify to that . . . ?"; (5) "Did you testify previously that Tommie Martin got in the car after he was coming out of the house . . . [stating that] 'He met me coming to the house, got back in the car and drove off?' "; (6) "Did you testify previously . . . [that] Tommie Martin got in the car with you and the three of you went to the BP gas station?"; (7) "[D]id you testify previously that when you got to the BP gas station, Tommie Martin was pumping the gas and Nicole Harris went to go and pay for the gas?"; and (8) "Did you testify previously . . . that you initially told the police Tommie Martin wasn't with you in order to protect Tommie Martin?"

At the conclusion of the plaintiff's testimony, the trial court, outside the presence of the jury, imposed fines for each of its eight additional contempt findings. Therefore, in total, the trial court found the plaintiff in contempt eighteen times and sentenced him to twelve months imprisonment and $1600 in fines.[3] Thereafter, the court remitted all the fines, but left intact the sentences of imprisonment based upon the first two contempt findings.

On appeal, the plaintiff claims that he properly exercised his privilege against self-incrimination and that the trial court therefore, improperly held him in contempt. In support of his claim, the plaintiff reiterates the arguments that he had made before the trial court. The trial court, however, did not address all of the plaintiff's claims, focusing instead on only one factor— that, by testifying at his own trial, the plaintiff had

---

[3] The trial court originally had imposed a $500 fine pursuant to General Statutes § 51-33a for each of the sixteen contempt findings for which the plaintiff did not receive a term of imprisonment. In a subsequent correction, however, the trial court noted that the proper authority for the contempt findings was General Statutes § 51-33, which allows a maximum fine of $100 per finding. Thereafter, the court corrected the amount of the fines imposed accordingly.

waived his privilege against self-incrimination. The state does not argue in support of the trial court's reasoning, but, rather, submits a variety of alternate grounds supporting the ultimate findings of contempt. The state's primary position is that the plaintiff properly was compelled to testify because he could not be punished any further for testifying, either for perjury, conspiracy or felony murder, were his conviction to be overturned. Essentially, the state contends that, because the trial court *compelled* the plaintiff to testify, the testimony would be inadmissible against him in any subsequent prosecution. In addition, the state claims that some of the questions the plaintiff refused to answer were merely foundational, and that, by answering previous questions in this proceeding, the plaintiff had waived his privilege. We conclude that the plaintiff properly invoked his privilege and, accordingly, that the trial court improperly held him in contempt.

"The present case, which involves a review of a summary criminal contempt proceeding, comes before us on a writ of error which is the sole method of review of such proceedings. *Whiteside* v. *State*, 148 Conn. 77, 78–79, 167 A.2d 450 (1961); *Goodhart* v. *State*, 84 Conn. 60, 63, 78 A. 853 (1911). The scope of our review reaches only those matters appearing as of record. *State* v. *Assuntino*, 180 Conn. 345, 347, 429 A.2d 900 (1980); *Reilly* v. *State*, 119 Conn. 217, 223, 175 A. 582 (1934). In a review of summary criminal contempt, the inquiry is limited to a determination of the jurisdiction of the court below. *Tyler* v. *Hamersley*, 44 Conn. 393, 413 (1877). Subsumed in this inquiry are three questions, namely, (1) whether the designated conduct is legally susceptible of constituting a contempt; *Goodhart* v. *State*, supra [63]; (2) whether the punishment imposed was authorized by law; *State* v. *Jackson*, 147 Conn. 167, 169, 158 A.2d 166 (1960); and (3) whether the judicial authority was qualified to conduct the hearing. *May-*

*berry* v. *Pennsylvania,* 400 U.S. 455, 465–66, 91 S. Ct. 499, 27 L. Ed. 2d 532 (1971). *Moore* v. *State,* 186 Conn. 256, 257, 440 A.2d 969 (1982). *In re Dodson,* 214 Conn. 344, 346–47, 572 A.2d 328, cert. denied, 498 U.S. 896, 111 S. Ct. 247, 112 L. Ed. 2d 205 (1990)." (Internal quotation marks omitted.) *Jackson* v. *Bailey,* 221 Conn. 498, 500–501, 605 A.2d 1350, cert. denied, 506 U.S. 875, 113 S. Ct. 216, 121 L. Ed. 2d 155 (1992).

This case implicates only the first question set forth in *Jackson,* that is, whether the plaintiff's conduct was legally susceptible of constituting a contempt. Id., 500. The plaintiff claims that under the circumstances of this case, he properly refused to answer the questions, and, accordingly, that the trial court improperly determined, based upon his prior conviction of felony murder, that the plaintiff no longer could invoke his privilege against self-incrimination. Therefore, we begin our analysis with our well settled law regarding a witness' invocation of the fifth amendment privilege.

A court may not deny a witness' invocation of the fifth amendment privilege against compelled self-incrimination unless it is "perfectly clear, from a careful consideration of all the circumstances in the case, that the witness is mistaken, and that the answer[s] cannot possibly have [a] tendency to incriminate." (Internal quotation marks omitted.) *State* v. *Williams,* 200 Conn. 310, 319, 511 A.2d 1000 (1986), quoting *Hoffman* v. *United States,* 341 U.S. 479, 488, 71 S. Ct. 814, 95 L. Ed. 1118 (1951). "To sustain the privilege, it need only be evident from the implications of the question, in the setting in which it is asked, that a responsive answer to the question or an explanation of why it cannot be answered might be dangerous because injurious disclosure could result." *Hoffman* v. *United States,* supra, 486–87; *State* v. *Simms,* 170 Conn. 206, 209, 365 A.2d 821, cert. denied, 425 U.S. 954, 96 S. Ct. 1732, 48 L. Ed. 2d 199 (1976). In appraising a fifth amendment claim

by a witness, a judge "must be governed as much by his personal perception of the peculiarities of the case as by the facts actually in evidence." (Internal quotation marks omitted.) *State* v. *Williams*, supra, 319.

The plaintiff contends that the trial court improperly concluded that he no longer could invoke the privilege against self-incrimination as a result of having testified in a prior proceeding.[4] Specifically, he contends that

[4] Although it was not the basis of the trial court's ruling, the state had stated in its motion in limine that the plaintiff no longer could invoke the privilege because he already had been convicted and sentenced for felony murder and first degree robbery arising out of the incident at Gallo's Liquor Store. The plaintiff claims in his brief to this court that, with respect to those events, he continues to retain his privilege against self-incrimination until the judgment of conviction becomes final. We agree with the plaintiff.

The weight of authority permits a witness whose conviction has not been finalized on direct appeal to invoke the privilege against self-incrimination and to refuse to testify about the subject matter which formed the basis of his conviction. See *Mitchell* v. *United States*, 526 U.S. 314, 326, 119 S. Ct. 1307, 143 L. Ed. 2d 424 (1999) (only where sentence fixed and judgment of conviction is final is there no basis for assertion of privilege); *Ottomano* v. *United States*, 468 F.2d 269, 273 (1st Cir. 1972), cert. denied, 409 U.S. 1128, 93 S. Ct. 948, 35 L. Ed. 2d 260 (1973) (accused could assert self-incrimination privilege on charge on which he already had been convicted when proceedings that could result in new trial were still pending); *State* v. *Gretzler*, 126 Ariz. 60, 88, 612 P.2d 1023 (1980), cert. denied, 461 U.S. 971, 103 S. Ct. 2444, 77 L. Ed. 2d 1327 (1983) ("[t]he Fifth Amendment privilege is available to a convicted person when his conviction or sentence is being appealed"); *People* v. *Lopez*, 110 Cal. App. 3d 1010, 1021, 168 Cal. Rptr. 378 (1980) ("a witness who has been convicted of a crime and who has appealed that conviction cannot be compelled to testify in the trial of a co-defendant pending the resolution of that appeal"); *People* v. *Villa*, 671 P.2d 971, 973 (Colo. App. 1983) (self-incrimination privilege of convicted coaccused "continues" where he "is appealing his conviction . . . in order to protect him[-self] from the subsequent use of self-incriminating statements in the event relief is granted"); *Landeverde* v. *State*, 769 So. 2d 457, 464–65 (Fla. App. 2000) (witness, who was convicted felon with pending motion to reduce his sentence, retained privilege against self-incrimination with regard to charges on which he was convicted); *Landenberger* v. *State*, 519 So. 2d 712, 713 (Fla. App. 1988) ("[i]n the absence of a [grant] of immunity, a convicted felon with an appeal pending has a Fifth Amendment privilege not to testify [when called as a witness], and this privilege continues throughout the pendency of the appeal [of his conviction]"); *State* v. *Linscott*, 521 A.2d 701, 703–704 (Me. 1987) (witness who has convictions pending on appeal may

the waiver of his privilege against self-incrimination at his own trial did not extend beyond that proceeding. We agree.

It is well settled that a waiver of the self-incrimination privilege in one proceeding does not affect the rights of a witness in another, separate proceeding. *State* v. *Grady*, 153 Conn. 26, 34, 211 A.2d 674 (1965)[5] ("It is settled law that even if an accused waives his privilege against self-incrimination by voluntarily testifying [at his own trial], the waiver is limited to the particular proceeding in which he volunteers the testimony. 8 Wigmore, Evidence § 2276 (4), p. 470 [McNaughton Rev. 1961]."); 1 C. McCormick, Evidence (5th Ed. 1999) § 134

claim self-incrimination privilege with regard to those convictions because of real possibility of new trial; contempt finding reversed); *Ellison* v. *State*, 310 Md. 244, 250, 253–54, 528 A.2d 1271 (App. 1987) (" '[i]t is well settled that a witness may invoke his privilege against self-incrimination where . . . the criminal action against him is still pending, as where an appeal is outstanding' "; "a witness who has been found guilty and sentenced on criminal charges is entitled to claim the privilege against self-incrimination with regard to matters underlying those charges while . . . a direct appeal or sentence review is pending"); *People* v. *Robertson*, 87 Mich. App. 109, 114, 273 N.W.2d 501 (1978) ("it is clear that the privilege against self-incrimination still applies where an appeal is pending after conviction on a charge to which the incriminating testimony would relate"); *State* v. *Pearsall*, 38 N.C. App. 600, 602–603, 248 S.E.2d 436 (1978) (witness retains self-incrimination privilege with regard to conviction still pending on direct appeal); *State* v. *Crislip*, 110 N.M. 412, 415, 796 P.2d 1108 (App.), cert. denied, 110 N.M. 260, 794 P.2d 734 (1990) (privilege against self-incrimination may be raised while direct appeal pending); *State* v. *Sutterfield*, 45 Or. App. 145, 147–48, 607 P.2d 789 (1980) (same); *Davis* v. *State*, 501 S.W.2d 629, 630–31 (Tex. Crim. App. 1973) (same); *State* v. *Marks*, 194 Wis. 2d 79, 91–92, 533 N.W.2d 730 (1995) (privilege against self-incrimination with respect to convictions continues through pendency of appeal of those convictions).

[5] In *State* v. *Grady*, supra, 153 Conn. 29, the defendant was convicted under an information in two parts; the first part charged him with several substantive offenses and the second part charged him with being an " 'habitual criminal' " under then General Statutes § 54-121. On appeal, this court held that, because the defendant voluntarily testified only at his trial under the first part of the information, his testimony from that trial should not have been read to the jury selected to hear the trial on the second part of the information. Id., 34–35.

("[a] witness's loss of the privilege by testifying . . . applies throughout but not beyond the 'proceeding' in which the witness has [testified]"). Indeed, virtually all the federal circuits recognize this principle.[6] It similarly is established in numerous states that have addressed the issue that a person who has waived his privilege in one proceeding is not estopped from asserting the privilege in a subsequent proceeding.[7]

---

[6] See, e.g., *United States* v. *Gary*, 74 F.3d 304, 313 (1st Cir.), cert. denied, 518 U.S. 1026, 116 S. Ct. 2567, 135 L. Ed. 2d 1084 (1996) (hornbook law that waiver of privilege is limited to particular proceeding in which witness appears); *United States* v. *Yurasovich*, 580 F.2d 1212, 1220 (3d Cir. 1978) (" '[i]t is well settled by the overwhelming weight of authority that a person who has waived his privilege of silence in one trial or proceeding is not estopped to assert [the privilege] as to the same matter in a subsequent trial or proceeding' "); *United States* v. *Housand*, 550 F.2d 818, 821 n.3 (2d Cir.), cert. denied, 431 U.S. 970, 97 S. Ct. 2931, 53 L. Ed. 2d 1066 (1977) (by weight of authority, fact that witness had testified at prior proceeding did not waive his right to claim privilege against self-incrimination at separate proceeding); *United States* v. *Goodman*, 289 F.2d 256, 259 (4th Cir. 1961) ("[i]t has been uniformly held that [prior testimony] . . . cannot constitute a waiver of the [self-incrimination] privilege with respect to the same matter in a subsequent legal proceeding"), vacated on other grounds, 368 U.S. 14, 82 S. Ct. 127, 7 L. Ed. 2d 75 (1961); *Ballantyne* v. *United States*, 237 F.2d 657, 665 (5th Cir. 1956), quoting *Poretto* v. *United States*, 196 F.2d 392, 394 (5th Cir. 1952) (" '[t]he constitutional privilege attaches to the witness in each particular case in which he is called upon to testify, without reference to his declarations at some other time or place or in some other proceeding' ").

[7] See, e.g., *State* v. *Spiegel*, 710 So. 2d 13, 16–17 (Fla. App.), cert. denied, 728 So. 2d 205 (Fla. 1998) ("waiver of the privilege [against self-incrimination] in one proceeding does not affect the right of a witness or accused to invoke the privilege as to the same subject matter in another independent proceeding"); *Anderson* v. *Southern Guaranty Ins. Co.*, 235 Ga. App. 306, 310, 508 S.E.2d 726 (1998) (witness' "election to testify in [a] prior criminal trial did not waive her rights under the Fifth Amendment in [subsequent separate proceeding]"); *Novak* v. *Rathnam*, 106 Ill. 2d 478, 484, 478 N.E.2d 1334 (1985) ("[a]n accused who testified in one proceeding does not waive his *right to invoke the self-incrimination privilege in a separate and independent proceeding*"); *State* v. *Knowles*, 395 So. 2d 678, 680 (La. 1981) ("[o]ne can waive silence at one trial and assert the right as to [the] same matter in a subsequent [separate] trial"); *State* v. *Linscott*, 521 A.2d 701, 703 (Me. 1987) (witness who previously testified at own criminal trial still entitled to invoke self-incrimination privilege at subsequent trial of alleged accomplice; noting this "nearly universal rule," contempt finding reversed); *Commonwealth* v. *Borans*, 338 Mass. 453, 457–58, 446 N.E.2d 703 (1983) (" '[i]t is the majority

Given the weight of this authority, the state does not defend the trial court's reasoning for its decision, but,

rule that waiver by testimony is limited to the proceeding in which it is given and does not extend to subsequent proceedings' "); *Imboden* v. *Romines*, 760 S.W.2d 130, 134 (Mo. App. 1988) ("[i]n federal courts, as well as state courts, the waiver of the privilege against self-incrimination is 'limited to the particular proceeding in which the witness volunteers the testimony or the accused takes the stand' "); *State* v. *Roberts*, 136 N.H. 731, 745, 622 A.2d 1225 (1993) ("[I]t is hornbook law that the waiver [of the self-incrimination privilege] is limited to the particular proceeding in which the witness appears. . . . The majority rule preserves a witness's right to assert the privilege [even] in subsequent, distinct stages of a single proceeding." [Citation omitted; internal quotation marks omitted.]); *State* v. *Decola*, 33 N.J. 335, 346, 164 A.2d 729 (1960) (recognizing that "[j]udicial decisions are virtually unanimous" that waiver of self-incrimination privilege in one proceeding does not carry over to another, independent proceeding); *State* v. *Crislip*, 110 N.M. 412, 415, 796 P.2d 1108 (App.), cert. denied, 110 N.M. 260, 794 P.2d 734 (1990) (" 'A person who has waived his [self-incrimination] privilege of silence in one trial or proceeding is not estopped to assert it as to the same matter in a subsequent trial or proceeding. The privilege attaches to the witness in each particular case in which he may be called on to testify, and whether or not he may claim it is to be determined without reference to what he said when testifying as a witness on some other trial, or on a former trial of the same case, and without reference to his declarations at some other time or place.' "); *State* v. *Hart*, 66 N.C. App. 702, 705, 311 S.E.2d 630 (1984) ("witness who testifies to incriminating matters in one proceeding does not thereby waive the right to refuse to answer questions concerning such matters at a subsequent hearing or trial"); *State* v. *Rawls*, 252 Or. 556, 558–59, 451 P.2d 127 (1969) ("the weight of authority and the general rule often repeated in American jurisprudence is that by testifying at a . . . previous trial, a witness does not waive his right to claim the [self-incrimination] privilege at a later trial"); *Commonwealth* v. *Rodgers*, 472 Pa. 435, 451 n.6, 372 A.2d 771 (1977) ("[t]he waiver of the privilege against self-incrimination in one proceeding does not affect the right to invoke it in an independent proceeding"); *Hummell* v. *Superior Court*, 100 R.I. 54, 57, 211 A.2d 272 (1965) ("[s]ubstantial authority supports the proposition that one who testifies [in one proceeding] does not thereby waive the privilege of refusing to testify in some subsequent proceeding on the ground of self-incrimination"); *Davis* v. *State*, 501 S.W.2d 629, 630 (Tex. Crim. App. 1973) ("a waiver [of the self-incrimination privilege] does not extend beyond the particular proceeding [at which the waiver occurred] and [thus] by voluntarily testifying at one's own trial the witness does not lose his privilege at a later proceeding [i.e., a coaccused's trial]"); *Stone* v. *State*, 85 Wash. 2d 342, 344, 534 P.2d 1022 (1975) ("established rule is that a waiver of the privilege against self-incrimination by testifying at one proceeding does not extend to a later, separate proceeding"); *State* v. *Whiting*, 136 Wis. 2d 400, 413,

rather, raises several arguments in the alternative to support the contempt findings. First, the state claims that, by answering some questions before invoking his fifth amendment privilege, the plaintiff essentially waived his right to withhold testimony in connection with any other questions. This court previously has held that "[a] testimonial waiver is not lightly to be inferred . . . [and] should be inferred only in the most compelling circumstances." (Citation omitted; internal quotation marks omitted.) *State* v. *Altrui*, 188 Conn. 161, 169, 448 A.2d 837 (1982). In the present case, before any questions were asked, the trial court issued a *directive* to the plaintiff to either answer *any and all* questions related to the robbery of Gallo's Liquor Store or face contempt. An inference that the plaintiff waived the privilege would require a determination that he began his testimony freely and voluntarily, knowing that his answers to any questions would be interpreted as a waiver. Id., 168. That supposition is not supported by the record here.

The state's second argument—that the questions relating to the plaintiff's prior testimony were merely foundational questions and were, therefore, not incriminatory in nature—is equally unavailing. Again, the court drew no distinction between foundational and other questions. It did not rule on a question-by-question basis, but, rather, the court issued a preliminary blanket ruling that required the plaintiff to answer *any and all* questions pertaining to the robbery. Moreover, the mere confirmation of the existence and accuracy of former incriminating testimony, albeit by implication, could itself be incriminating. *United States* v. *Miranti*, 253

---

402 N.W.2d 723 (1987) ("A person who has waived the [self-incrimination] privilege in one proceeding is not estopped from asserting it as to the same subject matter in a subsequent proceeding. . . . [A] fifth amendment waiver is limited to the particular proceeding in which the waiver occurs." [Citation omitted.]).

F.2d 135, 138 (2d Cir. 1958). Indeed, the acknowledg-
ment of his prior testimony that the state sought in the
present case would undoubtedly become part of the
state's evidence, in any subsequent prosecution for con-
spiracy or on retrial after a successful appeal, either as
part of its chain of proof or as a means of bolstering
the credibility of the prior testimony. See id.

Finally, the state argues that the trial court's con-
tempt findings were proper because the plaintiff's testi-
mony had been compelled, and consequently, the
testimony could not be used against him for any pur-
pose, either in connection with a retrial, should he pre-
vail on appeal, or any other trial. Therefore, according
to the state, because his compelled testimony could
not be used, the plaintiff could not invoke his fifth
amendment privilege to not testify. This argument is
flawed both as a matter of logic and law. The court
properly cannot compel testimony from a witness who
has a legitimate fifth amendment privilege. A court
properly can compel a witness to testify only when
there is no legitimate privilege. Accordingly, when a
court orders a witness cloaked with the privilege to
testify, that witness retains the right to exercise the
privilege, to refuse to testify, and to thereafter test the
validity of the privilege on appeal if the court finds him
in contempt. The state's argument here suggests that
when a court improperly orders a witness to testify, it
essentially grants him use immunity, notwithstanding
the otherwise proper exercise of the privilege, the trial
court's lack of power to grant such use immunity, and
the state's failure to invoke General Statutes § 54-47a.[8]

---

[8] General Statutes § 54-47a provides: "(a) Whenever in the judgment of
the Chief State's Attorney, a state's attorney or the deputy chief state's
attorney, the testimony of any witness or the production of books, papers
or other evidence of any witness (1) in any criminal proceeding involving
narcotics, arson, bribery, gambling, election law violations, felonious crimes
of violence, any violation which is an offense under the provisions of title
22a, corruption in the executive, legislative or judicial branch of state govern-
ment or in the government of any political subdivision of the state, fraud

Moreover, the trial court in the present case never intended to provide any immunity, nor did it suggest to the state that it should consider immunity as an option because the court improperly concluded that the plaintiff no longer held a fifth amendment privilege against self-incrimination. Therefore, any representation now by the state that it could not use the plaintiff's testimony at any subsequent proceeding because it was compelled reflects a consideration that it should have, but did not, express at the trial. Finally, the same argument expressed by the state herein was rejected expressly by the Supreme Court in *Pillsbury Co. v.*

by a vendor of goods or services in the medical assistance program under Title XIX of the Social Security Act amendments of 1965, as amended, any violation of chapter 949c, or any other class A, B or C felony or unclassified felony punishable by a term of imprisonment in excess of five years for which the Chief State's Attorney or state's attorney demonstrates that he has no other means of obtaining sufficient information as to whether a crime has been committed or the identity of the person or persons who may have committed a crime, before a court or grand jury of this state or (2) in any investigation conducted by an investigatory grand jury as provided in sections 54-47b to 54-47g, inclusive, is necessary to the public interest, the Chief State's Attorney, the state's attorney, or the deputy chief state's attorney, may, with notice to the witness, after the witness has claimed his privilege against self-incrimination, make application to the court for an order directing the witness to testify or produce evidence subject to the provisions of this section.

"(b) Upon the issuance of the order such witness shall not be excused from testifying or from producing books, papers or other evidence in such case or proceeding on the ground that the testimony or evidence required of him may tend to incriminate him or subject him to a penalty or forfeiture. No such witness may be prosecuted or subjected to any penalty or forfeiture for or on account of any transaction, matter or thing concerning which he is compelled to testify or produce evidence, and no testimony or evidence so compelled, and no evidence discovered as a result of or otherwise derived from testimony or evidence so compelled, may be used as evidence against him in any proceeding, except that no witness shall be immune from prosecution for perjury or contempt committed while giving such testimony or producing such evidence. Whenever evidence is objected to as inadmissible because it was discovered as a result of or otherwise derived from compelled testimony or evidence, the burden shall be upon the person offering the challenged evidence to establish a source independent of the compelled testimony or evidence."

*Conboy,* 459 U.S. 248, 261–63, 103 S. Ct. 608, 74 L. Ed. 2d 430 (1983), when it held that the federal District Court could not hold the witness in contempt for properly exercising his privilege against self-incrimination based upon the trial court's prediction that a future court would suppress that testimony and thereby not allow it to be used against the witness.

We conclude that the trial court in the present case improperly determined that the plaintiff could no longer invoke the privilege against self-incrimination because of his testimony in a prior proceeding, and we reject the state's alternate grounds for affirming the judgment of contempt. Accordingly, we conclude that each of the contempt findings must be vacated.

The judgment is reversed and the case is remanded with direction to vacate the contempt findings.

In this opinion the other justices concurred.